No. 96-001

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

      Plaintiff and Appellant,

v.

BRADLEY J. BELL,

      Defendant and Respondent.

FILED

AUG 2 2 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Big Horn,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Joseph P. Mazurek, Attorney General,
        John Paulson, Ass't Attorney General,
        Helena, Montana

        Christine A. Cooke, Big Horn County Attorney,
        Curtis L. Bevolden, Deputy County Attorney,
        Hardin, Montana

    For Respondent:

        James L. Vogel, Attorney at Law, Hardin,
        Montana

FILED

AUG 2 2 1996

Filed: Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  May 30, 1996

Decided:  August 22, 1996

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Pursuant to § 46-20-103(2)(b), MCA, the State appeals from the Big Horn County, Thirteenth Judicial District Court's Order modifying the jury verdict of defendant Bradley J. Bell (Bell). In response to Bell's motion for judgment notwithstanding the verdict or new trial, the District Court changed the verdict of guilty of criminal endangerment to a verdict of guilty of reckless driving. We reverse.

The issue on appeal is:

Whether the District Court erred in concluding that identification of a particular victim is an element of the offense of criminal endangerment.

BACKGROUND

In the mid-morning hours of September 21, 1994, Big Horn County Deputy Sheriff Gary Seder went to Bell's place of business, an auto shop, in Hardin, Montana, to investigate a stolen vehicle report. Bell denied Deputy Seder permission to search his place of business. Deputy Seder then went to Bell's residence in Hardin to further investigate. Bell, and his passenger Carl Venne, followed Deputy Seder to the house in Bell's yellow pickup truck. After an altercation with Deputy Seder outside the house, Bell returned to the truck where Venne was still sitting in the passenger seat. Deputy Seder approached the truck and opened the driver's door. Deputy Seder had one hand on Bell's arm and the other on the truck's door when Bell accelerated and sped away. Deputy Seder was

2

thrown back by the accelerating truck but was not hurt. Deputy Seder then pursued Bell in his patrol car, flashing the emergency lights and using the siren. Bell proceeded down Custer Avenue in Hardin at speeds between 50 and 80 mph. Bell did not stop at a stop sign and did not slow for a yield sign. Custer Avenue is a narrow city street. Bell's route took him past homes, churches, a library, and a grocery store. Bell turned off Custer Avenue onto Fourth Street, made a wrong way entry into a parking lot and stopped in front of the sheriff's office at the Big Horn County Courthouse.

Bell was charged by information with two counts of criminal endangerment in violation of § 45-5-207, MCA, and one count of criminal possession of dangerous drugs in violation of § 45-9-102(2), MCA. The first count of criminal endangerment involved Bell's speeding away from Deputy Seder while Seder was holding on to Bell and the pickup door. The second count of criminal endangerment involved Bell's high speed drive through Hardin. Bell pled not guilty to the three charges.

At trial, Deputy Seder testified that he saw two or three people standing on the curb in front of the grocery store as he pursued Bell but that he did not see anyone on the roadway. Deputy Seder also testified that he saw a vehicle stopped at the intersection with the yield sign at Custer Avenue and Fourth Street. After the two-day trial, the jury found Bell not guilty on the first count of criminal endangerment, guilty on the second

3

count of criminal endangerment, and guilty on the count of criminal possession of dangerous drugs.

Subsequently, Bell moved the court for judgment notwithstanding the verdict or new trial. In response, the court ordered that the jury's guilty verdict on count two of felony criminal endangerment be set aside and replaced with a guilty verdict for the offense of misdemeanor reckless driving. The court changed the verdict because it determined that the State had not proven an element of criminal endangerment. The court stated "[n]o evidence was presented by the prosecution indicating that an identified person had been placed in substantial risk of death or serious bodily injury by the defendant's actions." The State, pursuant to § 46-20-103(2)(b), MCA, appeals the District Court's modification of the jury verdict.

STANDARD OF REVIEW

As we stated in State v. Mummey (1994), 264 Mont. 272, 276, 871 P.2d 868, 870, the statutes governing criminal procedure do not provide for judgment notwithstanding the verdict. However, we also noted that:

> [Section] 46-16-702, MCA, permits a defendant to move for a new trial following a verdict of guilty, and under this statute, the district court may modify or change the verdict by finding the defendant guilty of a lesser included offense or finding the defendant not guilty.

Mummey, 871 P.2d at 870. As in Mummey, Bell's motion for judgment notwithstanding the verdict will be deemed a motion for a new trial made under § 46-16-702, MCA. Our standard of review of a district

4

court's ruling on a motion for new trial is whether the district court abused its discretion. Mummey, 871 P.2d at 870.

The State, however, argues that this case presents a question of statutory interpretation which should be reviewed as a question of law. State v. Christensen (1994), 265 Mont. 374, 375, 877 P.2d 468, 468-69. We agree. The District Court changed Bell's verdict based on its interpretation of the phrase "substantial risk of death or serious bodily injury to another" found in the criminal endangerment statute, § 45-5-207, MCA. The court based its interpretation of the phrase on the statute's legislative history, our decision in State v. Brown (1995), 270 Mont. 454, 893 P.2d 320, and an Arizona decision pertaining to a similar statute, State v. Morgan (Ariz. 1981), 625 P.2d 951. Thus, we determine whether the District Court's interpretation of law is correct. Christensen, 877 P.2d at 469.

DISCUSSION

> Whether the District Court erred in concluding that identification of a particular victim is an element of the offense of criminal endangerment.

The District Court concluded that because "[n]o evidence was presented by the prosecution indicating that an identified person had been placed in substantial risk of death or serious bodily injury by the defendant's actions," criminal endangerment had not been proven. Section 45-5-207, MCA, provides:

> (1) A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment. This conduct includes but is not limited to knowingly placing in a tree, log, or any other wood any steel, iron, ceramic, or other substance for the purpose

of damaging a saw or other wood harvesting, processing, or manufacturing equipment.

The second sentence of § 45-5-207, MCA, sets out an example of criminal endangerment in which there is no identified victim. Someone who knowingly places a "spike" in a tree creates a risk to an unknown, unidentified logger or mill worker. Much like driving 80 mph down a city street, "spiking" has the potential of endangering a person who happens to come into contact with the dangerous object. In a prosecution for spiking trees, it is sufficient that the State prove that the spike was "placed" for the purpose of damaging a saw. It is not necessary that the State prove that the tree was actually sawed or that an identifiable person was endangered or injured by the spike. Additionally, the criminal endangerment statute does not require proof that the defendant intended to injure another. Rather, it requires that the State prove that the defendant "knowingly" engaged in conduct and that the conduct created a *substantial risk* of death or serious bodily injury to another.

Recently, in State v. Smaage (Mont. 1996), 915 P.2d 192, 53 St.Rep. 294, we held that Smaage had been correctly charged under the criminal endangerment statute rather than under the DUI statutes. Smaage was arrested for driving recklessly in downtown Helena, weaving into the oncoming lane of traffic, and swerving down the street in the early morning hours. At the county jail, Smaage's blood alcohol content tested at .250, far over the legal limit of .10. On appeal, Smaage raised the issue of whether he should have been charged under the more specific DUI statutes

6

rather than the more general criminal endangerment statute. Although Smaage raised a different issue, much of the discussion in Smaage is relevant to the instant case. In Smaage, we determined that:

> [t]he presence of other people on the streets down which Smaage weaved the Buick--a potential lethal missile in the hands of a driver with a .250 blood alcohol content-- supports a finding that Smaage engaged in conduct creating a substantial risk of death or serious bodily injury to another. We conclude that the facts support a charge of criminal endangerment.

915 P.2d at 195.

Additionally, in Smaage, we looked at the legislative history of § 45-5-207, MCA, and quoted the Senate Judiciary Committee minutes as follows:

> Senator Yellowtail asked if a person drinks a case of beer and gets into a car, is that person guilty of criminal endangerment or is it negligence [sic] endangerment. Senator Halligan said an [sic] prosecuting attorney would charge him with the highest possible charge that they can, which is criminal endangerment.

915 P.2d at 194. The legislative history reveals that the legislature envisioned including drivers of cars within the purview of the criminal endangerment statute. Thus, Smaage establishes that a person who knowingly drives a car in such a manner that he creates a substantial risk of death or serious bodily injury to another, even if the "other" be an unidentified person on the street, can be guilty of criminal endangerment.

Our decision in State v. Brown specifically addresses the question of whether a potential victim must be identified in order for a defendant to be found guilty of criminal endangerment. Brown, 893 P.2d 320. In the instant case, the District Court based

7

its change of verdict, in part, on Brown. In Brown, the defendant fired several gunshots from his vehicle while traveling northbound from Missoula, Montana, on Highway 93. Janet Hatt was driving in front of Brown and saw him fire the shots. Although Brown was not aiming at her, Hatt was frightened for herself and her daughters who were also in her car. Shortly after the shots were fired, Hatt reported the incident and the police arrested Brown. Brown was charged with criminal endangerment. The jury acquitted him of this charge and instead found him guilty of negligent endangerment. Brown, 893 P.2d at 321.

Section 45-5-208(1), MCA, defines negligent endangerment:

A person who negligently engages in conduct that *creates a substantial risk of death or serious bodily injury to another* commits the offense of negligent endangerment. [Emphasis added.]

The italicized portion of the negligent endangerment statute is the same as the phrase at issue in the present case from the criminal endangerment statute. In Brown, we recognized the similarity of the statutes and we looked to the legislature's intent in passing § 45-5-207, MCA, the criminal endangerment statute: "The intent was to 'plug a hole in the criminal law' and address conduct such as placing poison into aspirin in a store." Brown, 893 P.2d at 322 (citing Minutes of the Montana House Judiciary Committee, February 5, 1987). As with spiking trees, if, before anyone was actually poisoned by that aspirin, a defendant was prosecuted for placing poisoned aspirin in a store, it would be impossible to identify a specific person put at risk by the defendant's conduct.

8

Brown moved for a directed verdict arguing that negligent endangerment requires proof of a substantial risk of death or serious bodily injury to an identified individual. Brown, 893 P.2d at 322. Brown contended that the State was required to prove that specific identified persons were put at risk by his conduct. We rejected his "identified individual" argument which would require proof that identified individuals were put at risk of death or serious bodily injury. Rather, we held that the State had presented sufficient evidence of a substantial risk of death or serious injury to another by proving that there were several homes along the highway and that there were unidentified passengers in a car pulled over on the side of the road. Additionally, we concluded that a trier of fact could have found that the shots fired by Brown placed Hatt and her daughters at risk. Brown, 893 P.2d at 322.

In interpreting Brown, the District Court concluded that since Hatt was an identifiable potential victim, the Brown decision does not stand for the proposition that the State need not prove that there was an identifiable victim in order to convict a defendant of criminal endangerment. We take this opportunity to clarify our holding in Brown. Although Brown involved both unidentified and identified potential victims, we now hold that no specific victim need be identified to find a defendant guilty of criminal endangerment. Given the clear language of the statute which specifically includes conduct (tree spiking) involving unidentified victims, the legislative history which provides examples of drunk

9

drivers and poisoned aspirin, neither of which necessarily require identified victims, and our holdings in Smaage and Brown, we hold that the District Court erred in concluding that the identification of a particular victim is an element of the offense of criminal endangerment.

Justice Trieweiler's dissent, relying on Bell's self-serving, after-the-fact assertions that his car was in good mechanical condition, that he was completely in control and that no one was in danger, expresses abhorrence at the proposition that a person can be guilty of a felony "for nothing more than driving too fast." Not surprisingly, our system of justice requires that the jury, not the accused, determines whether he violated the law; that is, whether his conduct created a substantial risk of death or serious bodily injury. Bell's contention that no one was in danger because he was "in control" is about as compelling as having someone shoot a rifle into a moving passenger train and downplay the significance of his conduct by arguing that his rifle is in good condition, that he is a good shot, he did nothing more than shoot at the baggage car and the police could not identify who, if anyone, was in the train or the baggage car at the time.

Although Bell may have had no intent to injure anyone, he knowingly drove down a city street at up to 80 mph. The fortuitous circumstance that he did not actually harm anyone or have any near misses is irrelevant. His driving down a city street at excessive speed created a risk of death or serious bodily injury to unnamed, unidentifiable people.

10

We note that not all speeding violations necessarily rise to the level of criminal endangerment. However, in situations such as the instant case, we hold that where a person drives a car at speeds up to 80 mph through occupied city streets, ignoring traffic signs, in the middle of the morning, that person creates a substantial risk of death or serious bodily injury to another, thus committing the offense of criminal endangerment.

Reversed and remanded for reinstatement of the verdict of guilty of criminal endangerment and resentencing in accordance with that verdict.

_____
Justice

We concur.

_____
Chief Justice

_____

_____

_____

Justices

11

Justice Terry N. Trieweiler dissenting

I dissent from the majority opinion which transforms anything but the most minor of traffic offenses to a felony punishable by a fine of up to $50,000 and imprisonment for a period of up to ten years. Surely as a result of this decision criminal endangerment has become Montana's "one size fits all" crime of choice for zealous prosecutors.

The circumstances which led to Bradley Bell's conviction of a serious felony are quite remarkable. He drove his vehicle which was in good mechanical condition directly from his house to the sheriff's office on a street where he had a clear field of vision with no obstructions to his line of sight. There were no other people or cars on the road. There were two or three people on the sidewalk approximately one-half block from where Bell turned into the sheriff's parking lot and there was a car at the final intersection before the sheriff's parking lot. However, the people on the sidewalk were not approaching the street and the pursuing officer acknowledged that Bell's brake lights went on prior to the last intersection.

Bell testified that there was no one in danger as a result of his operation of his vehicle and that he was completely in control at all times. When the pursuing officer was asked: "Can you name one person that Brad Bell caused substantial risk of injury to?" he answered, "I don't know of anybody, no."

The majority opinion characterizes Bell's testimony regarding the condition of his vehicle and the degree of his control over

12

that vehicle as self-serving. The implication is that for some reason we should assume, without proof by the State, that Bell was out of control and that someone must have been in danger. However, the last I knew, it was the State's burden to prove the factual basis for every crime charged. It is not the defendant's burden to prove that he did not endanger anyone. In this case, the State simply failed to prove that anyone was endangered.

The majority contends that it is up to the jury, not this Court, to determine whether the defendant violated the law. That is an interesting and novel approach for an appellate court. For five and one-half years I have been operating under the assumption that one of this Court's responsibilities was to assume the truth of the facts proven by the State and then determine as a matter of law whether those facts support the crime for which a defendant was convicted. Until now neither Justice Leaphart nor the other signators of the majority opinion had done anything to dispel that notion.

The majority opinion compares Bell's conduct to shooting a rifle into a moving passenger train. Suffice it to say that driving a vehicle down a street during daylight hours with a full and clear view of all that is in front of or on either side of the vehicle seems to me to bear little resemblance to blindly firing a bullet into a moving passenger train. Beyond that, analysis of why the majority would choose to compare a speeding vehicle to an armed assault is beyond my field of expertise.

The inference from the majority opinion is that without the sanction from the criminal endangerment statute, conduct like Bell's would go unpunished. However, that is not correct. There are numerous statutes which were specifically intended to punish conduct exactly like Bell's.

Section 61-8-301, MCA, prohibits operating a vehicle in willful or wanton disregard for the safety of persons or property. Section 61-8-302, MCA, prohibits careless driving, and § 61-8-303, MCA, requires that a vehicle be operated in a careful and prudent manner and at a speed of no more than 25 miles per hour in an urban district. It is significant that that maximum penalty that the Legislature deemed appropriate for even the most serious of these offenses (operating a vehicle in willful and wanton disregard for the safety of others while fleeing a peace officer) is imprisonment for not more than six months and a fine of not more than $500. Section 61-8-715, MCA.

If the Legislature intended the penalty for the exact conduct engaged in by the defendant to be no more than six months in prison and a fine of $500, how could the Legislature have at the same time authorized a penalty of up to ten years in prison and a fine of up to $50,000 based solely on the discretion of the charging authorities? The majority's conclusion to that effect makes no sense and opens the door to widespread abuse in the application of § 45-5-207, MCA.

I conclude that based on the facts presented in this case there was no evidence that Bradley Bell "knowingly engage[d] in

14

conduct that create[d] a substantial risk of death or serious bodily injury to <u>another</u>." Section 45-5-207(1), MCA (emphasis added).

The majority's suggestion that Bell can be convicted of criminal endangerment without endangering anyone simply because under other circumstances he might have endangered someone had they been on the street and encountered his speeding vehicle is a strange theory indeed. The fact that someone might have been endangered under other circumstances is completely irrelevant to whether the State proved the elements of the criminal endangerment statute based on the facts in this case. Based on the majority's conclusion the possibilities for prosecution under the criminal endangerment statute are limited only by the fertile imagination of the State's prosecutors; this is exactly the kind of ambiguity and opportunity for overcharging that our criminal jurisprudence has traditionally sought to avoid.

At a time when most Montanans correctly assume that there is no daytime speed limit in Montana, this Court has now held that law enforcement authorities can, at their discretion, charge the people of this state with a felony punishable by ten years in prison and a $50,000 fine for nothing more than driving too fast. This state may now have the most severe penalty in the country for a victimless crime.

Add one more bizarre twist to a year of strange developments in Montana.

15

For these reasons I dissent from the majority opinion.  I would affirm the judgment of the District Court.

_____
                Justice

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

_____
                Justice

Justice Karla M. Gray, dissenting.

I dissent and write separately to add an additional perspective to that advanced by Justice Trieweiler.

It is a fundamental precept of the law that statutes defining criminal offenses must "give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act in accordance therewith." State v. Huebner (1992), 252 Mont. 184, 187, 827 P.2d 1260, 1262. As Justice Trieweiler points out, various statutory offenses relating to operating a vehicle--including statutes addressing reckless driving, careless driving and the "basic speed rule" for urban areas--provide notice to the driver of a vehicle that driving at excessive speeds in a populated area is sanctionable conduct. Bell properly could have been charged with any or several of those offenses. Section 45-5-207, MCA, the felony criminal endangerment statute, on the other hand, provides no such notice. I submit that no person of ordinary intelligence would ever dream that speeding, regardless of how egregious the rate of travel but without a resulting injury to anyone, constitutes a felony offense carrying a penalty of imprisonment for up to ten years and a fine of up to $50,000.

Moreover, it is important to look to the legislative history of § 45-5-207, MCA. The criminal endangerment offense defined therein was introduced as H.B. 301 in the 1987 legislative session, in the words of the bill's sponsor, to "plug a hole in the criminal law." What hole? As the sponsor explained it, the offense "would

17

apply primarily to cases in which someone would introduce poison into aspirin tablets *or something of that nature.*" (Emphasis added.) No supporter of the bill testified or even suggested that the offense was intended to encompass any conduct relating to operating a vehicle, much less a speeding offense. One supporter offered, as an example of conduct which would come under the statute, the situation where a nurse who was a drug addict took a patient's medication for his or her personal use and gave the patient a different medication. This example corresponds in concept and nature to the "aspirin tampering" example provided by the sponsor.

Nor did any of the statutes from other states, upon which H.B. 301 purportedly was patterned and which were provided to the Judiciary Committees, address any conduct relating to operating a vehicle. Indeed, those statutes addressed only "reckless" endangerment and, except for one statute which made the offense a felony when the endangerment involved a substantial risk of imminent death, all of the other states' endangerment offenses were misdemeanors. The two court decisions supporters also provided-- one from Washington and one from Arizona--involved charges arising from gun incidents.

The only amendment to § 45-5-207, MCA, came during the 1989 legislative session. That amendment specifically added conduct commonly referred to as "tree spiking" to the definition of criminal endangerment. Such conduct is of the same nature as the "aspirin tampering" conduct for which the offense of criminal

18

endangerment originally was enacted.

Nothing in the legislative history of § 45-5-207, MCA, supports charging Bell's operation of a vehicle at excessive speeds as criminal endangerment. Nor does the language of the statute apprise a person of ordinary intelligence that speeding, with nothing more, constitutes a felony offense. I dissent.

_____
Justice