JUSTICE NELSON
dissenting.
I would hold that the District Court properly instructed the jury as to the mental state element for the offense of criminal endangerment, and, accordingly, I would affirm.
Section 45-5-207, MCA,[1] provides in pertinent part:
(1) A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment. This conduct includes but is not limited to knowingly placing in a tree, log, or any other wood any steel, iron, ceramic, or other substance for the purpose of damaging a saw or other wood harvesting, processing, or manufacturing equipment.
In interpreting a statute, we must first look to the words used and, if the language and meaning are plain, unambiguous, direct and certain, we simply ascertain and declare what is in terms or in substance contained therein, neither inserting what has been omitted nor omitting what has been inserted. See § 1-2-101, MCA; State v. Gould (1995), 273 Mont. 207, 219, 902 R2d 532, 540 (citing State v. Christensen (1994), 265 Mont. 374, 376, 877 P.2d 468,469 and Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088.)
While the majority holds that § 45-5-207(1), MCA, defines the mental state element of the offense of criminal endangerment, and, hence, the State’s burden of proof, in terms of the result of conduct, I conclude that, to the contrary, the plain language of the statute clearly and unambiguously requires that the State simply prove that the defendant knowingly engaged in risk-creating conduct, without the necessity of also proving his or her knowledge of the probability *244 that this conduct would cause a result. Moreover, I believe that our prior case law mandates this interpretation of the statute and does not at all support the majority’s view.
The operative language in the statute is “knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another. ...” The language chosen by the legislature makes unlawful a particular form of conduct — i.e., that which creates a substantial risk of death or serious bodily injury in another. Whether this conduct actually causes the result — death or serious bodily injury — is immaterial. The term “knowingly” modifies the term “conduct” and specifies the mental state required of the defendant during the time that he or she engages in this conduct if it is to be chargeable as the offense of criminal endangerment. It is the conduct which must create the risk, and it is knowledge of or awareness of this conduct that makes engaging in such conduct a criminal offense. So long as the defendant “knowingly” engages in the conduct and so long as that conduct is risk-creating, then, under the statute, it is irrelevant that the defendant also “know” or be aware that death or serious bodily injury will or will likely be caused by that conduct.
In short, there is nothing in the plain language of the statute that supports the majority’s interpretation. Rather, the majority has effectively rearranged the wording of § 45-5-207(1), MCA, and, hence, its statutory elements. To support the majority’s conclusion, the statute would have to provide: “A person who engages in conduct knowing that it creates a substantial risk ...” or “A person who knowingly causes a substantial risk ....” That is not how the statute is written, however. Rather, the mental state element of criminal endangerment focuses on the defendant’s knowledge of his or her risk-creating conduct and not on his or her knowledge of the result of such conduct.
Consequently, so long as the State demonstrated that Lambert’s conduct was risk-creating and so long as the State proved that he “knowingly” engaged in this conduct then the State met its burden of proof and Lambert was properly convicted of criminal endangerment. In making this determination, it is first necessary to focus on the conduct at issue.
In this case, the conduct in which Lambert engaged and which created a substantial risk of death or serious bodily injury to others was his driving while grossly intoxicated into the oncoming lane of traffic while his driving privileges were revoked. Neither causation nor result — his causing a serious automobile accident resulting in *245 personal injuries to other persons — are elements of the offense of criminal endangerment; rather it is his risk-creating conduct which the legislature proscribed.
For this risk-creating conduct to be chargeable as the offense of criminal endangerment, however, the statute also requires that it must be engaged in “knowingly.” Generally, this mental state can be proven in alternative ways under Montana’s criminal code:
[A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person’s own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person’s conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence. [Emphasis added.]
Section 45-2-101(33), MCA.
In this case, the trial court instructed the jury on this mental state element as follows:
A person acts knowingly:
(1) when he is aware of his conduct or
(2) when he is aware under the circumstances that his conduct constitutes a crime or
(3) when he is aware there exists the high probability that his conduct will cause a specific result.
Court’s Instruction No. 12 (emphasis added).
Lambert objects only to definition (1), apparently conceding the applicability of definitions (2) and (3). The correctness of that concession aside, it is clear that definition (1) from Instruction No. 12 is included within the statutory definition of § 45-2-101(33), MCA, and based upon the statutory definition of criminal endangerment it is also clear that definition (1) is the mental state element applicable to this offense.
As pointed out above, the “conduct” proscribed by the statute defining criminal endangerment is that which “creates a substantial risk of death or serious bodily injury to another.” Section 45-5-207(1), MCA. The State is required to prove that the defendant engaged in this conduct “knowingly.” It does that under § 45-2-101(33), MCA, by demonstrating that the defendant was “aware of his conduct” — i.e., *246 that the defendant was aware that he was conducting himself in such a fashion so as to create a substantial risk of death or serious bodily injury in another.
While a person’s state of mind can rarely be proven by direct evidence, the existence of a mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense, § 45-2-103(3), MCA, and may be demonstrated circumstantially. State v. Brogan (1993), 261 Mont. 79,89,862 P.2d 19,25-26.
The evidence here was that Lambert drank to the point of being heavily intoxicated and that, with his driving privileges revoked, he, nonetheless, drove his vehicle from the bar parking lot into the oncoming lane of traffic and collided with the Petersen automobile. At the accident scene, to the police, emergency responders and everyone else present, Lambert gave every appearance and physical manifestation of being grossly intoxicated; he was belligerent; he refused medical treatment; he was unconcerned about the carnage he had caused; he acted inappropriately in view of the seriousness of the situation; and there were full and empty bottles of beer in his car along with a partially consumed bottle of whiskey.
Lambert was obviously aware that he had been drinking — he indicated that to the investigating officer, although he minimized the amount he had drunk. Moreover, he was obviously aware that he was driving — he first stated that he did not see the Peterson car and then attempted to lay fault on Christine Petersen. When asked what happened, Lambert said:
Pulled up, turned out, and they were right there. I thought they were going the other way. They were there just like right now, so either I didn’t see them, or they were going way too fast.
Under such circumstances any rational trier of fact could have, and likely would have, concluded that Lambert was “aware of his conduct” — i.e., that his conduct was such to create a substantial risk of death or serious bodily injury to another — and that he, therefore, acted “knowingly.” It was irrelevant that Lambert may not have intended to cause the accident or that he even intended to put any one in general or in particular at risk. It was sufficient that his conduct — driving blind drunk into oncoming traffic — was risk-creating and that he was aware of what he was doing when he engaged in that conduct.
This interpretation is fully supported by and consistent with our prior case law which, for the most part, is virtually ignored by the majority.
*247 In State v. Clawson (1989), 239 Mont. 413, 781 P.2d 267, we stated that “it is clear that the statute is created to punish reckless or negligent behavior which has the inherent potential of resulting in death or serious bodily injury to another person.” Clawson, 781 P.2d at 272 (emphasis added).
Moreover, in State v. Crisp (1991), 249 Mont. 199, 814 P.2d 981, we pointed out that the statute “does not require that the victim suffer actual physical injury ... [but rather] [i]t requires only that the defendant engage in conduct that creates a substantial risk of death or serious bodily injury.” Crisp, 814 P.2d at 984. Unfortunately, in addressing the primary issue in Crisp — the constitutionality of the criminal endangerment statute — and with no real analysis of the ordering of language defining that offense, we erroneously misstated which definition of “knowingly” is applicable in discussing the mental state element. Unlike the majority, I would take this opportunity to clarify Crisp rather than perpetuate that error.
In State v. Willson (1991), 250 Mont. 241, 818 P.2d 1199, we affirmed the defendant’s conviction of criminal endangerment and his designation as a dangerous offender where he drove through downtown Billings at speeds up to 100 miles per hour while under the influence of crank and cocaine, with resulting property damage and personal injury to innocent people. Willson, 818 P.2d at 1203.
Likewise, in State v. Brown (1995), 270 Mont. 454, 893 P.2d 320, we rejected the notion that either criminal endangerment or negligent endangerment (§ 45-5-208, MCA) required the State to prove that any specifically identified individual was put at risk by the defendant’s conduct in firing several gunshots from a moving vehicle in the direction of homes and vehicles along the highway.
Similarly, in State v. Smaage (1996), 276 Mont. 94, 915 P.2d 192, we affirmed a conviction of criminal endangerment where, having been previously convicted of six DUIs (one of which resulted in a death and negligent homicide conviction)[2] and with a blood alcohol level of *248 .250, the defendant swerved his Buick through early morning Helena traffic. We concluded that Smaage knowingly engaged in conduct that created a substantial risk of death or serious bodily injury to others. Smaage, 915 P.2d at 195.
Finally, and most recently, in State v. Bell (1996), 277 Mont. 482, 923 P.2d 524, we upheld the defendant’s conviction of criminal endangerment where he entered his pickup and then accelerated and sped away while a deputy sheriff had one hand on Bell’s arm and the other on the truck’s open door and where the defendant then drove at speeds of between 50 and 80 miles per hour through Hardin streets with the authorities in pursuit.
In Bell we cited the language of the statute itself, its legislative history and our decisions in Smaage and Brown in concluding that the defendant’s knowing conduct creating a substantial risk of death or serious bodily injury to another — rather than the result of that conduct — was what violated the law. Referring to the “tree spiking” language of § 45-5-207, MCA, and likening that to driving 80 miles per hour down a city street, we stated:
In a prosecution for spiking trees, it is sufficient that the State prove that the spike was “placed” for the purpose of damaging a saw. It is not necessary that the State prove that the tree was actually sawed or that an identifiable person was endangered or injured by the spike. Additionally, the criminal endangerment statute does not require proof that the defendant intended to injure another. Rather, it requires that the State prove that the defendant “knowingly” engaged in conduct and that the conduct created a substantial risk of death or serious bodily injury to another. [Emphasis added.]
Bell, 923 P.2d at 526.
We went on to cite Brown and its discussion of the legislative history of criminal endangerment, noting that it was the legislature’s intent “to ‘plug a hole in the criminal law’ and address conduct such as placing poison into aspirin in a store.” Bell, 923 P.2d at 527 (emphasis added) (citing Brown, 893 P.2d at 322).
We concluded with the following:
Although Bell may have had no intent to injure anyone, he knowingly drove down a city street at up to 80 mph. The fortuitous circumstance that he did not actually harm anyone or have any near misses is irrelevant. His driving down a city street at excessive speed created a risk of death or serious bodily injury to unnamed, unidentified people.
*249 [W]e hold that where a person drives a car at speeds up to 80 mph through occupied city streets, ignoring traffic signs, in the middle of the morning, that person creates a substantial risk of death or serious bodily injury to another, thus committing the offense of criminal endangerment. [Emphasis added.]
Bell, 923 P.2d at 528.
While the majority reads the criminal endangerment statute as emphasizing result over conduct, our prior decisions, to the case, support precisely the opposite conclusion. In each case we have focused on conduct which creates a substantial risk as that which is proscribed by a statute. The result of that conduct was wholly irrelevant in our prior decisions. It was irrelevant that no particular victim was identified as being put at risk by the conduct at issue; it was irrelevant that no one was actually injured by the conduct at issue. Rather, we focused entirely on the risk-creating nature of each defendant’s conduct.
Whether the conduct at issue is spiking a tree, poisoning a bottle of aspirin, firing a gun in the general direction of houses and vehicles, driving at an excessively high rate of speed through occupied streets, or driving while grossly intoxicated, we have uniformly and consistently focused on the perpetrator’s risk-creating conduct only and not on whether he was aware that his conduct would cause any particular result.
Contrary to the majority’s suggestion, criminal endangerment does not arise in situations where one is simply “driving a car” or “shooting a hunting rifle.” Rather, it arises where the conduct at issue involves driving a car, blind drunk, into oncoming traffic or driving a car at a high speed through occupied city streets with the police in hot pursuit or shooting a hunting rifle in the direction of homes and vehicles. If the defendant is aware that he is engaging in that sort of risk-creating conduct, then he is acting knowingly and whether he is also aware of the result or potential result of his conduct is irrelevant. When I fire my rifle into a moving train, or, while dead drunk, I drive my car into oncoming traffic, all the time being aware of my conduct in doing those activities, then I have acted knowingly. My protestations that I wasn’t aware that anyone would be hurt or killed is meaningless.
Having set forth what is, I believe, the correct analysis of the applicable law, I next address Justice Leaphart’s special concurrence. First, the author criticizes the District Judge for instructing the jury *250 utilizing various definitions of “knowingly.” In point of fact, the judge instructed the jury in accordance with the statute defining the mental state, only one portion of which was objected to by Lambert; the defendant, himself, agreed with two-thirds of the “smorgasbord.” Next Justice Leaphart tries to make sense out of the majority holding by using an example involving issuing a bad check. He then goes on to claim that the dissent contends that the mental state element for issuing a bad check and for criminal endangerment are similar. The concurring Justice is wrong on both counts. The dissent did not and does not make that contention. Moreover, the dissent strongly disagrees that Justice Leaphart has articulated the correct mental state element for issuing a bad check in his example.
A person simply aware that he is issuing or delivering a check-i.e;, a person who is “aware of his conduct” (subsection (1) of the court’s instruction) has not the mental state required for commission of the criminal offense. Again, focusing on the actual ordering of the language of the statute, the person must issue or deliver the check “knowing that it will not be paid by the depository.” In other words he must not only be aware of his conduct (issuing or delivering the check), but he must also be aware that under the circumstances his conduct constitutes a crime or will cause a specific result — i.e., that the check will not be paid by the depository (subsections (2) and (3) of the court’s instruction).
Unlike the offense of criminal endangerment wherein “knowingly” modifies the term conduct, in the offense of issuing a bad check, “knowing” modifies the result. Contrary to the special concurrence, the result proscribed by the statute is not that the check was issued or delivered (that is simply conduct) or that anyone is defrauded (that is not even an element of the offense). The prohibited result of issuing or delivering the check is that the check will not be paid by the depository. If one issues or delivers a check knowing that will be the result, then the offense is committed.
The special concurrence then goes on to state that in Smaage, the State had to prove that the defendant “was aware that there was a high probability that his driving, under [the facts of the case], created a specific result, that is, a substantial risk of death or serious bodily injury.” Justice Leaphart misquotes our opinion. In Smaage, we referred to the mental state element of the offense as follows:
The elements of criminal endangerment are the mental state of “knowingly’ and the act of engaging in conduct that creates a substantial risk of death or serious bodily injury to another. A *251 person commits the offense of criminal endangerment when he is aware that there is a high probability that his conduct may cause a substantial risk of death or serious bodily injury to another. State v. Crisp (1991), 249 Mont. 199, 203, 814 P.2d 981, 983. [Emphasis added.]
Smaage, 915 P.2d at 195. We then went on to describe the trial court’s quoting with approval comments from Smaage’s prior negligent homicide sentencing regarding his extensive criminal history involving DUI, and stated:
The above comments by the District Court outline the evidence in the record supporting a finding that Smaage acted “knowingly.” The presence of other people on the streets down which Smaage weaved the Buick — a potential lethal missile in the hands of a driver with a .250 blood alcohol content — supports a finding that Smaage engaged in conduct creating a substantial risk of death or serious bodily injury to another.
Smaage, 915 P.2d at 195.
At no point in Smaage did we hold or even imply that the defendant had to be aware of a specific result of his conduct to be convicted of criminal endangerment. To the contrary, the language quoted above states that Smaage was properly convicted because he “knowingly” engaged in risk-creating conduct.
While Justice Leaphart criticizes the dissent for “see[ing] the risk factor as being part and parcel of the conduct, rather than a ‘result’ of the conduct,” that is precisely how the Legislature has chosen to define the offense of criminal endangerment — “conduct that creates a substantial risk of death or serious bodily injury to another....” The result of conduct is not proscribed; rather, a specific sort of conduct itself is prohibited. If the Legislature wanted to prohibit the result of the conduct — e.g., engaging in conduct, knowing that it creates a substantial risk, etc., — the Legislature could have and would have used different language than it did.
Finally, Justice Leaphart uses the example of the three shooters. Jones fires in the direction where there is nothing but an open field. He is aware that he is engaging in conduct that is not causing a substantial risk of death or serious bodily injury to another. Obviously, Jones is not criminally endangering anyone.
Smith fires in the direction of a grove of trees, wherein, unbeknownst to him, there is located a house. Justice Leaphart concludes that under subsection (1) of the court’s instruction, Smith could be charged with criminal endangerment since he was aware of his *252 conduct. I suggest that such a conclusion depends necessarily on facts which are not set out in his example. If the grove of trees is located in the Bob Marshall Wilderness, a jury might well conclude that Smith’s conduct was not risk-creating at all. I.e., in the words of the statute, shooting into a grove of trees in the Bob was not conduct that “create[d] a substantial risk of death or serious bodily injury. ...” Accordingly, being aware that one was engaging in that conduct would not be criminally chargeable because the conduct was not proscribed by the statute. On the other hand, if the grove of trees was located in a residential development adjacent to the field, then a jury might well conclude that, under those circumstances, shooting into the trees was risk-creating conduct. Being aware that one was engaging in that conduct would be chargeable.
Johnson fires toward a cluster of houses in plain view. Obviously Johnson is aware that his conduct is risk-creating. He can be charged with and convicted of criminal endangerment.
Again the focus of criminal endangerment is on the conduct — was it risk-creating or not? The State must prove that the conduct was risk-creating — i.e., that the conduct creates a substantial risk of death or serious bodily to another — and that the defendant was aware he was engaging in that conduct. Under the language chosen by the Legislature, the State does not have to prove that the defendant was aware of any specific result.
Justice Leaphart’s suggestion that proof of knowledge based on subsection (1) of the court’s instruction would render negligent endangerment (§ 45-5-208, MCA) and criminal endangerment indistinguishable is an issue not raised in this case. Moreover, this suggestion is likely incorrect in any event, given that the mental state of “negligently” is specifically defined in terms of result instead of conduct. Section 45-2-101(42), MCA.
Furthermore, contrary to the special concurrence, the issue in this case was not a claim of error in giving the jury the option of picking and choosing definitions of the mental state element of the crime charged. The issue involves an instruction that gave the jury three statutory definitions of the mental state element, two of which the parties and the court agreed to and one of which was objectionable to Lambert. The defendant had no problem with the “smorgasbord;” he merely did not like one of the entrees.
Finally, in regard to Justice Trieweiler’s special concurrence, suffice it to say that I agree with neither his analysis nor with the outcome of the factual scenarios he has chosen to use as examples— *253 none of which even remotely approximate the facts presented to the jury in this case. I find it interesting, however, that he concedes, as he must, that while “in this case there was obviously evidence that Lambert was aware that his conduct would create a substantial risk of harm,” in the next sentence he concludes that the jury might not have reached this same “obvious” conclusion because of an instruction which allowed them to determine Lambert’s mental state if they were convinced that he was aware that he was engaging in this very risk-creating conduct. It is instructive, indeed, to learn that while judges are capable of discerning the obvious, men and women who serve on our trial juries, apparently, are not. Our collective agonizing over the definition of mental states aside, I suspect that the next jury will be in no better position to divine what was going on in Lambert’s drunken mind with the new instruction than the present jury was with the instruction given by the court. Fortunately, the next panel will likely still be able to discern the “obvious”, regardless.
In failing to properly analyze the mental state element of criminal endangerment within the context of the actual language of the statute and our prior case law, the majority has come to the wrong conclusion. The trial court’s instruction that Lambert acted knowingly if he was “aware of his conduct” was correct.
I would affirm, and I dissent from our failure to do so.
CHIEF JUSTICE TURNAGE and JUSTICE ERDMANN join in the foregoing dissent.

. Unless otherwise stated, the 1993 version of the Montana Code is cited herein as that was the version in effect when Lambert committed the offenses with which he was charged.

. By comparison, Smaage’s record pales in the face of Lambert’s criminal history. According to the presentence investigation report, Lambert, at 31 years of age, had been convicted of driving under the influence 9 times in Montana and California; his license had been suspended or revoked 16 times; he had been charged with driving while his license was suspended or revoked some 20 times; he had received 11 separate jail sentences that ranged from serving two days in jail to serving 60 days in jail; he had been fined between $30 and $1000 for his offenses; he had failed to complete court-ordered after-care or Alcoholics Anonymous; and, while released on bond in the instant case, he was again arrested for DUI, driving while his license was suspended or revoked and eluding a peace officer.