No. 12948

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

THE STATE OF MONTANA,

                    Plaintiff and Respondent,

    -vs-

JERRY ALLEN HERRON,

                    Defendant and Appellant.

Appeal from:  District Court of the Fourth Judicial District,
              Honorable Robert Keller, Judge presiding.

Counsel of Record:

    For Appellant:

        Daniel J. Shea argued, Missoula, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana
        Thomas A. Budewitz, Assistant Attorney General,
        argued, Helena, Montana
        Robert L. Deschamps, III argued, County Attorney,
        Missoula, Montana

                            Submitted:  November 12, 1975

                            Decided: JAN 22 1976

Filed:

*Thomas J. Kearney*
                                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant appeals from his conviction of attempted second degree murder and the 25 year sentence imposed in the district court, Missoula County.

On October 20, 1972, a teen-age girl was riding her bicycle on the highway near Clearwater Junction. She was shot by a shotgun fired from a passing vehicle. Defendant Jerry Allen Herron was arrested the same day and was ultimately tried for four alternative crimes: 1) Attempted second degree murder. 2) First degree assault with intent to kill. 3) First degree assault with attempt to commit a felony. 4) Second degree assault.

The first trial on these charges was held in June 1973. The jury was given these two instructions, among others:

> "Instruction No. 20. The crimes charged against the Defendant are all felony offenses. Therefore, all twelve of your number must agree in order to return a verdict of guilty or not guilty, and all twelve of your number must agree in order to decide any question necessary to be decided in arriving at a verdict on a crime.
>
> "It is necessary that you consider the crime of attempted murder first, and find the defendant either guilty or not guilty of that charge.
>
> "In the event you find the defendant guilty of attempted murder you need go no further as you will have reached a verdict in this case.
>
> "In the event you find the defendant not guilty of attempted murder, then you must consider the crime of Assault in the First Degree with intent to kill as embodied in alternative Count II of the Information. You must find the defendant either guilty or not guilty of Assault in the First Degree with intent to kill. In the event you find the defendant guilty of that charge, you have reached a verdict and need go no further.
>
> "In the event you find the defendant not guilty of Assault in the First Degree with intent to kill, you must consider the alternative Count Number III of the Information which is Assault in the First Degree with intent to commit a felony. In the event you find the defendant guilty of that charge, you have reached a verdict and need go no further.

"In the event you find the defendant not guilty of Assault in the First Degree under both Counts II and III, you must then consider the lesser included offense of Assault in the Second Degree. You must find the Defendant guilty or not guilty of this charge, and when you do so, you have reached a verdict and need not proceed further."

"Instruction No. 24 When you retire to the jury room, you shall select one of your number to act as foreman, who will preside over your deliberations. In order to reach a verdict, all twelve jurors must agree to the decision. As soon as you have agreed upon a verdict, you shall have it dated and signed by your foreman and then shall return with it to this room."

The jury was provided with eight forms of verdict. The jury deliberated one entire night, returned to court at 5:40 a.m. and announced its failure to reach a verdict, and was discharged.

Three days later a member of the jury telephoned defendant's attorney for the stated purpose of informing him what had actually occurred during the night of jury deliberations.

According to the affidavit of this juror, which was filed by defendant's attorney, the jury had actually voted unanimously to acquit defendant of attempted second degree murder, first degree assault with intent to kill, and first degree assault with intent to commit a felony. The jury was deadlocked only on defendant's guilt or innocence of second degree assault.

Defendant's counsel contacted the jury foreman by phone who substantially corroborated these events and further explained the reason why no verdict forms had been signed to reflect the verdict. According to the foreman's affidavit, the jury was confused by two instructions, No. 20 and No. 24, heretofore quoted. The jurors asked the bailiff to convey a question to the presiding judge as to whether they should sign the first verdict form before proceeding to the next charge. No record exists concerning what the bailiff asked the judge or what the judge replied to the bailiff, as no court reporter was in attendance and no attempt was made to notify either counsel of the jurors' confusion. The affidavit

indicated the bailiff told the jury foreman that the jury was to arrive at only one verdict in the case and therefore should sign only one form.

These events were corroborated by the affidavits of the other jurors. Their version of events was never questioned by the state in its brief or oral argument on appeal.

The second trial of defendant was held in December 1973. Defendant was tried on the same charges, with one exception; the charge of first degree assault with intent to kill was dismissed. The jury was unable to reach a verdict on the remaining three charges at the second trial.

A third trial was held in June 1974, on the same charges as in the second trial. Defendant was convicted of attempted second degree murder and sentenced to 25 years imprisonment in the state prison, where he is presently incarcerated.

At the second and third trials defendant maintained the district court had no jurisdiction to try him again on charges of attempted second degree murder or first degree assault with intent to commit a felony, because he had been acquitted of both charges at the first trial. His claim is based on the double jeopardy provision of the Federal and State Constitutions. They provide:

> Amendment 5, United States Constitution:
>
> "* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."
>
> Article II, Section 25, 1972 Montana Constitution:
>
> "* * * No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction."

The double jeopardy provision of the United States Constitution prohibits being twice placed on trial, as well as twice punished for the same offense. It does not prohibit retrial for the same offense if the first trial results in a hung jury. We find no reason to construe the double jeopardy provision of Montana's

Constitution otherwise.

The ultimate question on appeal is whether the record in this case discloses an acquittal or a hung jury at the first trial on the charge of attempted murder. This issue must stand or fall on the answer to these questions:

1. The effect of the oral communication between the jury and the court in the absence of counsel?

2. Whether juror affidavits can be used to supply proof of actual events that occurred during jury deliberation?

In view of the fact this defendant was tried three times before conviction and defense counsel raised the issues we are about to discuss at the second and third trials, this Court is at a loss to understand why, upon discovering the facts after the first trial, he did not apply to this Court for a writ of supervisory control. His failure to do so caused the expense of two needless trials, along with unnecessary trauma to his client.

The oral communication between the jury and the court via the bailiff clearly violates section 95-1913(d), R.C.M. 1947:

> "(d) After Retirement, May Return into Court for Information. After the jury has retired for deliberation if there be any disagreement among them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon being brought into court, the information requested may be given in the discretion of the court; if such information is given it must be given in the presence of the county attorney and the defendant and his counsel."

It also violates the proscription against oral jury instruction. State v. Beesskove, 34 Mont. 41, 85 P. 376; State v. Wakely, 43 Mont. 427,437, 117 P. 95; State v. Asher, 63 Mont. 302,306, 206 P. 1091; State v. Gies, 77 Mont. 62,64, 249 P. 573.

As a general rule additional instructions to the jury must comply with the law and failure to follow the law constitutes reversible error. The vice of the situation here is that defendant's attorney was not notified nor present and had no way to protect his

client from the jury's confusion. This is patently prejudicial. Had the jury convicted defendant of the charge of attempted murder at the first trial, the verdict would have had to be set aside because of reversible error, chargeable to the state.

Can juror affidavits be used to prove what occurred during jury deliberations? The district court, prior to the second trial, held that they could not on the ground that juror affidavits cannot be used to impeach jury verdicts in Montana. This holding is error.

In the instant case the juror affidavits were not used to impeach the jury verdict, because the jury did not return a verdict of any kind. The affidavit was used to show that because of outside influences on the jury during its deliberations, a verdict of acquittal on three of the charges was actually rendered by the jury but was not returned to the court due to the confusion over jury instructions. The state does not deny this. Justice compels the use of juror affidavits to prove what actually occurred.

For the foregoing reasons, the judgment of conviction of attempted second degree murder is vacated. The cause is remanded to the district court for retrial on the remaining charge of second degree assault.

_____
Justice

We Concur:

_____

_____
Justices

- 6 -

Mr. Chief Justice James T. Harrison and Mr. Justice Wesley Castles dissenting:

We dissent. The order declaring a mistrial as a result of a deadlocked jury was made on June 29, 1973. It was not until December 2, 1973, that the effort to, in effect, impeach a jury verdict was made.

In the transcript of proceedings taken before Judge Keller on December 3, 1973, Judge Keller inquired specifically as to Judge Dussault's recollections; counsel had not even inquired. Nor was the bailiff questioned. Judge Keller carefully inquired and finally ruled. Judge Keller stated in part:

> "MR. SHEA: For the record, Your Honor could the Court state the grounds for denying the motion?
>
> "THE COURT: Yes. This is an effort to in essence impeach a verdict of a jury or virtually to bring out what a true verdict was, one in open Court before the jury announced that they cannot agree upon a verdict and the jury was discharged at that time for the reason that they could not agree upon a verdict and nothing further was done at that time. * * * The motion is denied for the reason that this jury has been discharged and this effort to find out what that jury did comes in the first instance some days after---the first Motion for Acquittal was filed some days after the jury had been discharged and with respect to the part that the inference that the Court had misinstructed the jury, that comes months after the jury had been discharged and in both cases well after the possibility for the jury to be contacted by other persons could have occurred. * * *
>
> "The first motion is to instruct the Defendant and his counsel and as far as the Court is concerned, it means all parties to the Defendant and his counsel, not to indicate in any way that the jury previously impaneled in this case was at one point in the deliberations 11 to 1 for complete acquittal. * * * In as far as voir diring this jury panel is concerned, they cannot go into what the alleged vote was of that jury. * * *"

Then later the following exchange appears:

> "MR. SHEA: For the record, Your Honor, I would request so that all the facts may be brought out before the Court and I have no objection. In fact, I make the request that the Court inquire of both bailiffs--they are both here today as I understand it --- as to what the communications were made from the jury to them to the judge and back to them and back to the jury again. And also I would be willing to go in to ask the Court that presided at that time as to any recollections he may have of the circumstances.

"THE COURT: Do you want me to inquire?

"MR. SHEA: Yes sir, so a record can be made.

"THE COURT: Now are you done with your motion and ready to go?

"I am satisfied that what you are doing in this case, the main reason, as far as I am concerned, is that your Motion for Acquittal is denied, that the salient point, if it is salient, that comes up, comes up in December and this case was tried in June. Is that correct?

"MR. DESCHAMPS: Yes, that is correct.

"MR. SHEA: The last of June, yes sir, Your Honor.

"THE COURT: And frankly I am satisfied that that is something that you should have ascertained right after this case was over and if there was any validity to your motion that it would have been as a result of diligent work on your part. The only reason that I say that is because I want you to be aware of what my feelings are, Mr. Herron. I want you to be satisfied now when I ask you, are you satisfied with the services rendered by your counsel, your counsel that is going to represent you in this case."

The majority opinion states that the affidavits were not used to impeach a jury verdict. But clearly the Court is allowing, by affidavit of one juror of recollections five months later, the impeachment of the jury's deadlock or failure to reach a verdict. To do that the majority is disregarding the hearing transcript where Judge Keller noted that there was no record of any communication between the Judge, the bailiff, and the jury. Now, five months later, this is attempted to be shown by recollections of the jury foreman.

We would affirm the judgment in all particulars.

_____
Chief Justice

_____
Justice.

- 8 -