No. 97-655

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 244

STATE OF MONTANA,

Plaintiff and Respondent,

v.

THOMAS WHITE CLAY,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Big Horn,

The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James L. Vogel, Attorney at Law, Hardin, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;

C. Mark Fowler, Ass't Attorney General, Helena Montana

Christine A. Cooke, Big Horn County Attorney;

Curtis Bevolden, Deputy County Attorney, Hardin, Montana

Submitted on Briefs: September 17, 1998

Decided: October 15, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1 Thomas White Clay (White Clay) appeals from the judgment entered by the Thirteenth Judicial District Court, Big Horn County, on a jury verdict finding him guilty of the offense of felony assault. More particularly, White Clay appeals from the District Court's denial of his alternative posttrial motions for a new trial or for a directed verdict. We affirm.**

**¶2 The restated issues on appeal are:**

**¶3 1. Whether the District Court abused its discretion in denying White Clay's**

No

motion for a new trial.

¶4 2. Whether sufficient evidence supports White Clay's conviction for felony assault.

BACKGROUND

¶5 The State of Montana (State) charged White Clay by information with committing the offense of felony assault. The events which gave rise to the charge began with an argument between White Clay and Wesley Stewart (Stewart), an off-duty Bureau of Indian Affairs police officer, at a bar in Hardin, Montana, after both had been drinking heavily. Later, White Clay and Stewart met again at a convenience store. After White Clay overheard a comment made by Stewart to his friend, Cody Wilhelm (Wilhelm), in the store, he and Wilhelm approached Stewart in his vehicle and ultimately challenged Stewart to fight them. Stewart exited his car and knocked Wilhelm's hat off his head without hitting Wilhelm. White Clay ran to his car, picked up a tire jack, came up behind Stewart and struck Stewart on the head with the tire jack.

¶6 White Clay asserted the statutory defense of defense of another person. He admitted striking Stewart, but claimed that he did so because he thought Stewart was beating up on Wilhelm and he feared any blow to Wilhelm's head could be fatal. White Clay's fear was based on his understanding that, because of a head injury sustained in a car accident, Wilhelm could go into a coma "and maybe never wake up" if hit in the head.

¶7 The case was tried to a jury over two days and the jury retired to deliberate at approximately noon on February 19, 1997. The court reconvened in chambers at 4:17 p.m., having received a written message from jury foreperson Dick Salyer (Salyer), on behalf of juror Marie Scott (Scott). The message read:

> I feel the defendant is not guilty. I feel that his action was in self-defense. I also feel upset to think that a public servant like Mr. Stewart would provoke things like this to happen.

The District Court and counsel discussed what to do in response to the message, with the court ultimately recommending that the jury be called in and inquiry made of the jury foreperson as to whether there was any possibility of reaching a verdict upon

further deliberation. In the event the foreperson felt no verdict could be reached, a mistrial would be in order; in the event that a verdict seemed possible, the court would send the jury back for further deliberations. Both the State and White Clay's counsel agreed that the recommended procedure was satisfactory.

¶8 The court reconvened in the courtroom with the jury present at 4:23 p.m. In response to the court's question regarding whether it was going to be possible to reach a verdict, Salyer stated that he did not honestly know. The District Court then asked whether it might be fruitful to deliberate more before coming to a conclusion or would it be helpful if the jury went back into the jury room and discussed that issue among themselves. Salyer responded that "we probably owe it to the Court to do that." The court then advised that, if a deadlock were reached, that should be reported but, if the jury felt it would like to deliberate more, it should do so. The court advised the jury to take whatever time it wanted and the jury returned to the jury room at 4:26 p.m.

¶9 The court reconvened again at 4:51 p.m., the bailiff having advised that the jury had reached a verdict. The verdict of guilty was read, the jury was polled at White Clay's request, and each juror responded that the verdict as read was his or her verdict. The District Court directed the clerk to file the verdict, ordered a presentence report, scheduled the sentencing hearing and continued White Clay's release on his own recognizance pending the sentencing hearing. The jury was then discharged and the court adjourned at 4:57 p.m.

¶10 White Clay subsequently filed a motion for a new trial based on jury-related issues and, in the alternative, a motion for a directed verdict of acquittal on the basis that he had established his defense of defense of another person as a matter of law. The District Court denied the motions and, thereafter, sentenced White Clay. Judgment was entered accordingly and White Clay appeals.

## DISCUSSION

¶11 1. Did the District Court abuse its discretion in denying White Clay's motion for a new trial?

¶12 White Clay's motion for a new trial raised several jury-related issues: 1) that the verdict rendered was not properly unanimous; and 2) that the District Court's

actions in sending the jury back for further deliberations constituted an outside influence or judicial coercion, thereby rendering the verdict invalid. Both of these issues were based on an affidavit submitted by juror Scott. The District Court denied the motion and White Clay asserts error.

¶13 New trial motions in criminal cases are governed by § 46-16-702, MCA, pursuant to which a district court may grant a new trial "if required in the interest of justice." The grant or denial of a motion for a new trial is within the discretion of the trial court and its decision will be affirmed absent an abuse of that discretion. *State v. Brogan* (1995), 272 Mont. 156, 160, 900 P.2d 284, 286 (citations omitted). With these standards in mind, we address in turn White Clay's assertions of error with regard to the District Court's denial of his motion for a new trial.

¶14 Article II, Section 26 of the Montana Constitution and § 46-16-603(1), MCA, require jury verdicts in criminal actions to be unanimous. Relying entirely on Scott's affidavit, White Clay argues that the jury verdict is invalid in that it is not a proper unanimous verdict. According to Scott's affidavit, she concluded White Clay was not guilty, another juror "leaned" toward a not guilty vote, and both she and the other juror "experienced substantial pressure from the rest of the jurors." Scott also stated that, after being sent back to continue deliberating by the court, she "felt substantially pressured by the circumstances and by the balance of the jury, and agreed to go along with the verdict of guilty." Finally, Scott stated that she believes, to this day, that White Clay was not guilty but "did go along with the other jurors to reach a unanimous result."

¶15 It is not uncommon for a party moving for a new trial or mistrial to submit a juror affidavit or statement in support of the motion. *See, e.g., State v. Walker* (1996), 280 Mont. 346, 354, 930 P.2d 60, 64; *State v. Kelman* (1996), 276 Mont. 253, 261, 915 P.2d 854, 859; *Brogan*, 272 Mont. at 160, 900 P.2d at 287. The threshold question in such a circumstance is whether the juror affidavit or statement can be considered for the purpose of impeaching the verdict. *See Brogan*, 272 Mont. at 160-61, 900 P.2d at 287.

¶16 Upon an inquiry into the validity of a verdict, Rule 606(b), M.R.Evid., prohibits a juror from testifying

as to any matter or statement occurring during the course of the jury's

deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

The rationale underlying the prohibition is to prevent litigants and the public from invading the privacy of the jury room during, or after, the deliberations. Juror testimony to impeach a verdict to which assent has been given is excluded not because it is irrelevant, "but because experience has shown that it is more likely to prevent than to promote the discovery of the truth." *Estate of Spicher v. Miller* (1993), 260 Mont. 504, 507, 861 P.2d 183, 185 (citations omitted). Rule 606(b) also contains limited exceptions, however. Under those exceptions, a juror may testify or submit an affidavit concerning

(1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

Rule 606(b), M.R.Evid.

**¶17 Applying Rule 606(b) to the affidavit before us, it is clear that Scott's affidavit concerning feeling pressure from other jurors and the circumstances relates solely to matters which occurred during the jury's deliberations and to the effect of such matters on Scott's mind or emotions in influencing her to assent to the verdict. Moreover, nothing in the affidavit relates to extraneous prejudicial information brought to the jury's attention, outside influences brought to bear, or being induced to assent by resort to the determination of chance. Thus, on the face of it, Rule 606 (b), M.R.Evid., prohibits use of the Scott affidavit to impeach the verdict.**

**¶18 Relying on *State v. Herron* (1976), 169 Mont. 193, 545 P.2d 678, however, White Clay argues that the District Court erred in failing to consider Scott's affidavit. His reliance on *Herron* is misplaced.**

**¶19 In *Herron*, the jury was provided with eight verdict forms and instructed that,**

when it had agreed on a verdict, the appropriate verdict form was to be signed and the jury was to return to the courtroom. After lengthy deliberations, the jury returned to court, announced its failure to reach a verdict, and was discharged. *Herron*, 169 Mont. at 195, 545 P.2d at 680. Thereafter, contacts between jurors and defense counsel indicated that the jury had voted unanimously to acquit the defendant on the most serious charges and had deadlocked only on the least serious charge. A juror affidavit indicated that the jury had been confused by two instructions and asked the bailiff to convey a question to the judge about whether to sign the first verdict form before proceeding to the next charge. No record existed of any communications between the bailiff and the judge, but the juror affidavit stated that the bailiff told the jury to arrive at only one verdict and sign only one form. *Herron*, 169 Mont. at 195-96, 545 P.2d at 680. The defendant was tried again on the more serious charges and convicted. Relying on the juror affidavit, he claimed that, having been acquitted in the first trial, he could not again be put in jeopardy. The trial court concluded that the juror affidavit could not be used to impeach the verdict and the defendant appealed. In a one-paragraph discussion, this Court concluded that the affidavit was not being used to impeach the verdict, because no verdict had been returned. Instead, the affidavit was being used to show that, because of "outside influences" on the jury, verdicts of acquittal on three charges were actually rendered but not returned to the court. Under such a circumstance, "[j]ustice compels the use of juror affidavits to prove what actually occurred." *Herron*, 169 Mont. at 196-98, 545 P.2d at 680-81.

¶20 The facts of the instant case bear no resemblance to the unique circumstances presented in *Herron,* where the juror affidavit was submitted to support a double jeopardy claim rather than to impeach a jury verdict. Moreover, *Herron* was decided before the July 1, 1977, effective date of Rule 606(b), M.R.Evid., and White Clay cites to no authority decided pursuant to the Rule which would permit consideration of Scott's affidavit under one of the exceptions to the Rule 606(b) prohibition on juror testimony or affidavits for purposes of impeaching the jury verdict in this case. Furthermore, *State v. Anderson* (1984), 211 Mont. 272, 293, 686 P.2d 193, 204, which holds that similar allegations relating to internal pressures could not serve as the basis of inquiry into the verdict, controls the outcome here. We conclude, therefore, that the District Court did not err in denying White Clay's motion for a new trial on the basis that Scott's affidavit could not be considered in order to impeach the verdict.

¶21 White Clay's second avenue of attack on the District Court's denial of his motion for a new trial is that the judge's purported coercion in sending the jury back for further deliberations constituted an "external influence" on the jury. In this regard, we note at the outset that Scott's affidavit does not allege any actions by the presiding judge that coerced or compelled her to change her position or relinquish her view about White Clay's innocence. Moreover, White Clay's argument, which apparently seeks to bring the Scott affidavit within one of the exceptions set forth in Rule 606(b), M.R.Evid., for purposes of attacking the validity of the verdict, finds no support in the Rule or in our case law. No language in the Rule provides for--or would support-- a "judge as external influence" exception to the general prohibition contained in Rule 606(b), M.R.Evid., and we have long held that the exceptions stated in Rule 606 (b) "are exclusive, and are narrowly construed." *See State v. Maxwell* (1982), 198 Mont. 498, 505, 647 P.2d 348, 353 (citation omitted).

¶22 White Clay's final jury-related assertion of error is that the District Court's inquiry into the jury's deliberations and its return of the jury for further deliberations coerced Scott into relinquishing her view of White Clay's innocence in favor of reaching a unanimous decision. We note again the absence of any specific statements to this effect in Scott's affidavit.

¶23 White Clay is correct, however, that judicial coercion may constitute a basis for granting a new trial or a mistrial under certain circumstances, as discussed--for example--in *State v. George* (1986), 219 Mont. 377, 711 P.2d 1379. White Clay urges us to determine that judicial coercion occurred in the present case and reverse the District Court's denial of his motion. The State contends, in response, that the District Court properly analyzed the coercion argument.

¶24 We decline to address this argument on the merits. Except in limited circumstances not applicable here, a defendant must object to adverse rulings or actions by the trial court in order to preserve the matter for appeal to this Court. Sections 46-20-104 and 46-20-701, MCA. Nor will we put a trial court in error for a ruling or procedure in which a party acquiesced or participated. *See Matter of R.B.O.* (1996), 277 Mont. 272, 283, 921 P.2d 268, 275; *In re Pederson* (1993), 261 Mont. 284, 287, 862 P.2d 411, 413. Here, White Clay did not object to the court's actions in responding to the statement from foreperson Salyer on behalf of juror Scott and sending the jury back for further deliberations. Indeed, his counsel affirmatively agreed to the court's recommendations regarding how to respond. While White Clay

raised the judicial coercion argument in his posttrial motion, we hold that his failure to timely object to the procedure and, indeed, his active acquiescence in that procedure, constituted a waiver of his right to assert error in that regard on appeal.

¶25 We hold that the District Court did not abuse its discretion in denying White Clay's motion for a new trial.

¶26 2. Does sufficient evidence support White Clay's conviction for felony assault?

¶27 The jury found White Clay guilty of committing the offense of felony assault, defined in § 45-5-202(2)(a), MCA (1995), as purposely or knowingly causing bodily injury to another with a weapon. In doing so, it rejected his § 45-3-102, MCA, defense of defense of another person.

¶28 As an alternative to his posttrial motion for a new trial, White Clay moved the District Court for a directed verdict of acquittal on the basis that he had proved his defense as a matter of law. The District Court rejected White Clay's argument and denied his motion; White Clay asserts error.

¶29 A directed verdict of acquittal is appropriate only when no evidence exists to support a guilty verdict. *State v. Mergenthaler* (1994), 263 Mont. 198, 203, 868 P.2d 560, 562-63. As a result, we review a district court's ruling on a motion for a directed verdict under the same standard used to review a jury verdict. In other words, after viewing the evidence in a light most favorable to the prosecution, we determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Weeks* (1995), 270 Mont. 63, 87, 891 P.2d 477, 491-92 (citation omitted).

¶30 Here, White Clay does not dispute that sufficient evidence was presented pursuant to which a rational trier of fact could have found the essential elements of the felony assault offense beyond a reasonable doubt. Indeed, together with Stewart's testimony about his injuries, White Clay's own testimony--that he purposely hit Stewart with the tire jack to hurt him--was sufficient to support the jury's guilty verdict.

¶31 Instead, White Clay argues that he presented sufficient evidence to establish that he believed Stewart was about to strike Wilhelm and used force he reasonably

believed necessary to defend Wilhelm against Stewart's imminent use of unlawful force on Wilhelm. As a result, according to White Clay, he established his defense as a matter of law and was entitled to a directed verdict of acquittal. White Clay misapprehends both the nature of the defense and the state of the law.

¶32 In *State v. Sattler*, 1998 MT 57, 956 P.2d 54, 55 St.Rep. 230, we clarified the relationship between the prosecution's burden to prove the elements of a charged offense beyond a reasonable doubt and a defendant's burden of producing sufficient evidence in support of a defense asserted under § 45-3-102, MCA, to raise a reasonable doubt about his guilt. In doing so, we observed that the elements of the defense, like the elements of the charged offense, are factual in nature and are to be determined by the jury. *Sattler*, ¶ 55 (citation omitted). Thus, in a case where a jury is considering a factually based defense, as is generally the case with factual questions, "[i]t is within the province of the finder of fact to weigh the evidence presented and determine the credibility of witnesses; in the event of conflicting evidence on factual issues, the trier of fact determines which will prevail." *See Sattler*, ¶ 55 (citation omitted).

¶33 Here, White Clay and the State presented conflicting evidence regarding whether White Clay reasonably believed it was necessary for him to use force on Stewart to defend Wilhelm against imminent use of unlawful force by Stewart. These factual matters were for the jury to determine. *See Sattler*, ¶ 55. The presentation of evidence sufficient to support the § 45-3-102, MCA, defense merely entitles a defendant to have the defense submitted to the jury; it does not raise a reasonable doubt as to the defendant's guilt as a matter of law. *See Sattler*, ¶ 61.

¶34 We conclude that a rational jury could have found beyond a reasonable doubt that White Clay purposely or knowingly caused bodily injury to Stewart with a weapon. We hold, therefore, that sufficient evidence supports White Clay's conviction of the offense of felony assault and, on that basis, we further hold that the District Court did not err in denying White Clay's motion for a directed verdict of acquittal.

¶35 Affirmed.

/S/ KARLA M. GRAY

No

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART