No. 98-381

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 115

294 Mont. 397

983 P.2d 881

STATE OF MONTANA,

Plaintiff and Respondent,

v.

WAYLAND PAUL HARRIS,

Defendant and Appellant.

No

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr.; Cannon & Sheehy, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, John Paulson, Ass't

Attorney General, Helena, Montana

Bernie Cassidy, Lincoln County Attorney, James B. Wheelis,

Deputy County Attorney, Libby, Montana

Submitted on Briefs: February 4, 1999

Decided: May 28, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1. Wayland Paul Harris (Harris) appeals from the judgment entered by the Nineteenth Judicial District Court, Lincoln County, on a jury verdict finding him guilty of incest. We affirm.

¶2. Harris raises the following issues on appeal:

¶3. 1. Did the District Court err in failing to instruct the jury that, to find Harris guilty of incest, the jurors must reach a unanimous verdict on at least one specific act of incest?

¶4. 2. Did the District Court err in concluding that the guilty verdict on the incest charge was not legally inconsistent with the verdict acquitting Harris of sexual intercourse without consent?

¶5. 3. Did the District Court err in concluding that the verdict did not violate Harris' constitutional right to equal protection?

¶6. 4. Did the District Court err in not precluding the State from using Harris' extrajudicial statement for purposes of impeachment at trial?

BACKGROUND

¶7. The State of Montana (State) charged Harris by amended information with three offenses, each based on allegations that he had sexual relations with his adopted daughter, Gwen Michelle Larson (Gwen). Count I of the amended information charged Harris with sexual intercourse without consent, a felony, alleged to have occurred on numerous occasions between November of 1988 and November 21, 1991. Count II charged him with sexual intercourse without consent, a felony, alleged to have occurred on numerous occasions between November 21, 1991, and January 1, 1997. Count III charged him with incest, a felony, alleged to have occurred on numerous occasions between November of 1988 and January 1, 1997.

¶8. After a four-day trial in December of 1997, the jury acquitted Harris of the two sexual intercourse without consent charges and found him guilty of incest. Harris subsequently moved the District Court to set aside the verdict and dismiss the incest charge on the grounds that the verdict was inconsistent and contrary to the instructions given the jury, and the conviction violated his constitutional right to equal protection. The District Court denied Harris' motion, sentenced him, and entered judgment on the conviction and sentence. Harris appeals.

DISCUSSION

¶9. 1. Did the District Court err in failing to instruct the jury that, to find Harris guilty of incest, the jurors must reach a unanimous verdict on at least one specific act of incest?

¶10. Prior to deliberations, the District Court instructed the jury that the law required the jury verdict to be unanimous and that all twelve jurors must agree in order to reach a verdict on each charge against Harris, whether that verdict be guilty or not guilty. Harris argues that the court should have given a more specific unanimity instruction. He asserts that, because each of the charges in the amended information encompassed lengthy time periods, the court should have instructed the jurors that they were required to agree unanimously that he performed at least one specific act constituting the offense during the time period alleged in each charge to find him guilty of the offense, and that the court's failure to do so was error. The State responds that Harris failed to preserve this argument for appeal because he did not offer a more specific unanimity instruction and did not object to the unanimity

instruction given.

¶11. A party may not assert error on appeal as to any portion of, or omission from, jury instructions unless the party made an objection at the time of settling the instructions which specified the matter objected to and the grounds for the objection. Section 46-16-410(3), MCA. Additionally, the failure to make a timely objection during trial constitutes a waiver of the objection on appeal unless one of the circumstances outlined in § 46-20-701(2), MCA, exists. Section 46-20-104(2), MCA. Harris concedes that he did not object to the unanimity instruction given by the court or to the failure to give a more specific instruction, and that none of the § 46-20-701 (2), MCA, circumstances exists here. Thus, pursuant to these statutes, he is barred from raising this issue on appeal. Harris urges us, however, to address this issue under the common law doctrine of plain error review.

¶12. We have held that, notwithstanding the failure to object to an alleged error and the inapplicability of § 46-20-701(2), MCA, we may discretionarily review a claimed error which affects fundamental constitutional rights where failing to review it may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings or compromise the integrity of the judicial process. State v. Finley (1996), 276 Mont. 126, 137, 915 P.2d 208, 215. We further held in Finley, however, that we will use our inherent power of plain error review sparingly and only in exceptional cases meeting one of the above criteria. Finley, 276 Mont. at 138, 915 P.2d at 215. Based on our review of the record before us, we conclude that this is not one of those exceptional cases warranting plain error review and we decline to address this issue.

¶13. 2. Did the District Court err in concluding that the guilty verdict on the incest charge was not legally inconsistent with the verdict acquitting Harris of sexual intercourse without consent?

¶14. Following trial, Harris moved to set aside the verdict and dismiss the incest charge, arguing that it was legally inconsistent for the jury to have found him not guilty of the sexual intercourse without consent charge alleged in Count I, but guilty of the incest charge alleged in Count III. The District Court denied the motion and Harris asserts error.

¶15. We observe that the criminal procedure statutes do not provide for motions to set aside the verdict. However, § 46-16-702, MCA, permits a defendant to move for a new trial and authorizes a trial court addressing such a motion to modify or change a verdict by finding a defendant not guilty of the offense. Consequently, we deem Harris' motion a motion for a new trial under § 46-16-702, MCA. See State v Bell (1996), 277 Mont. 482, 485, 923 P.2d 524, 526. We review a district court's ruling on a motion for a new trial to determine whether the court abused its discretion. Bell, 277 Mont. at 485, 923 P.2d at 526. Furthermore, the District Court's determination that the verdicts were not inconsistent under the law involves a question of law. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Bell, 277 Mont. at 486, 923 P.2d at 526.

¶16. As stated above, Harris was charged with two counts of sexual intercourse without consent, which is defined in § 45-5-503(1), MCA, as knowingly having sexual intercourse without consent with another person. Count I was based on alleged acts of sexual intercourse with Gwen occurring between November of 1988 and November 21, 1991, while Count II was based on alleged acts of sexual intercourse with Gwen occurring between November 21, 1991, and January 1, 1997. The separate charges reflect the statutory definition of the term "without consent" for purposes of establishing the offense of sexual intercourse without consent. Count I encompasses a time period when Gwen was under the age of 16 and, pursuant to § 45-5-501(1)(b)(iii), MCA, was legally incapable of consenting to sexual intercourse. Consequently, in order to prove the offense charged in Count I, the State was required to prove only that Harris and Gwen had sexual intercourse during the time period alleged; the lack of consent element of the offense was presumed based on evidence that Gwen was under the age of 16.

¶17. Harris contends that, because lack of consent was presumed under Count I, the not guilty verdict on that charge necessarily means that the jury found the State had not proved he and Gwen had sexual intercourse between November of 1988 and November 21, 1991. He further notes that the incest charge alleged in Count III alleged acts of sexual intercourse during a time period which encompassed the same period of November of 1988 through November 21, 1991. He argues therefrom that, because the jury found no acts of sexual intercourse occurred between November of 1988 and November 21, 1991, it is legally impossible for the jury to have found him guilty of incest under Count III.

**¶18. A person commits incest if he or she**

knowingly marries, cohabits with, has sexual intercourse with, or has sexual contact . . . with an ancestor, a descendant, a brother or sister of the whole or half blood, or any stepson or stepdaughter.

Section 45-5-507(1), MCA. Count III of the amended information alleged that Harris had committed incest by having sexual intercourse with Gwen, a descendent by adoption, on numerous occasions between November of 1988 and January 1, 1997. Although the incest charge included the same time period alleged in Count I, it also included an additional period of over five years which did not form the basis for Count I. Furthermore, notwithstanding that Count III alleged numerous acts of sexual intercourse, the State was required to prove only one act of sexual intercourse between Harris and his adopted daughter during the period alleged in Count III for the jury properly to have found that Harris committed incest. Thus, it is conceivable that, in finding Harris guilty of incest, the jury found that an act of sexual intercourse occurred between Harris and Gwen after November 21, 1991, and, indeed, Gwen's testimony about a specific act of intercourse which occurred on January 1, 1997, provided sufficient evidence of record to support such a finding. As a result, we conclude that it was not legally inconsistent for the jury to acquit Harris of sexual intercourse without consent under Count I and find him guilty of incest under Count III.

**¶19. We hold that the District Court correctly concluded that the guilty verdict on the incest charge was not legally inconsistent with the verdict acquitting Harris of sexual intercourse without consent. We further hold, therefore, that the court did not abuse its discretion in denying Harris' motion to set aside the verdict and dismiss the incest charge which we have deemed a motion for a new trial.**

**¶20. 3. Did the District Court err in concluding that the verdict did not violate Harris' constitutional right to equal protection?**

**¶21. Harris also moved to set aside the verdict finding him guilty of incest on the basis that, if he were guilty of incest, it necessarily followed that Gwen also was guilty of incest and the State's failure to prosecute her for that offense violated his constitutional right to equal protection. The District Court concluded that the State's decision not to prosecute Gwen was a reasonable exercise of prosecutorial discretion**

and denied the motion. Again, we deem Harris' motion to set aside the verdict to be a motion for a new trial under § 46-16-702, MCA, and we review the District Court's ruling to determine whether the court abused its discretion. See Bell, 277 Mont. at 485, 923 P.2d at 526. Furthermore, when resolution of an issue involves a question of constitutional law, we review the court's interpretation of the law to determine whether it is correct. See State v. Koehn, 1998 MT 234, ¶9, 966 P.2d 143, ¶ 9, 55 St. Rep. 985, ¶ 9 (citations omitted).

¶22. A person commits the offense of incest if he or she "knowingly . . . has sexual intercourse with . . . an ancestor, a descendant, a brother or sister of the whole or half blood, or any stepson or stepdaughter." Section 45-5-507(1), MCA. Harris was charged with--and found guilty of--having sexual intercourse with his adopted daughter. The relationships set forth in the incest statute include the relationship of parent and child by adoption and, thus, Harris' adopted daughter would be considered a descendant. See § 45-5-507(1), MCA. Harris notes that the statute also makes it a crime to have sexual intercourse with an ancestor and contends that, because he was found guilty of incest for having sexual intercourse with Gwen, it necessarily follows that Gwen is guilty of incest for the same act because he is her ancestor. He argues that, once the jury found that sexual intercourse occurred, the State's failure to prosecute Gwen for that offense constituted disparate treatment of members of the same class and violated his constitutional right to equal protection of the law.

¶23. A prosecutor has broad discretion in determining whether or not to prosecute. State v. Lemmon (1984), 214 Mont. 121, 126, 692 P.2d 455, 457. Thus, the conscious exercise of some selectivity in the enforcement of criminal laws, without more, does not constitute a violation of constitutional rights. Lemmon, 214 Mont. at 126, 692 P.2d at 458; see also, State v. Stanko, 1998 MT 323, ¶ 51, ___ P.2d ___, ¶ 51, 55 St. Rep. 1313, ¶ 51; State v. Pease (1987), 227 Mont. 424, 428, 740 P.2d 659, 661; State v. Maldonado (1978), 176 Mont. 322, 328-29, 578 P.2d 296, 300. A person asserting that his or her constitutional rights have been violated by selective prosecution must allege and prove that the selection was deliberately based on an unjustifiable standard such as race, religion or other arbitrary classification. Stanko, ¶ 51; Pease, 227 Mont. at 428, 740 P.2d at 661; Lemmon, 214 Mont. at 126, 692 P.2d at 458; Maldonado, 176 Mont. at 329, 578 P.2d at 300.

¶24. Here, while Harris contends that his constitutional right to equal protection of

the laws was violated by the State's failure to prosecute Gwen for incest, he has not alleged--much less shown--that the State's decision not to prosecute Gwen was based on any arbitrary, unjustifiable standard. As a result, we conclude that Harris has not established that his constitutional right to equal protection of the law has been violated.

¶25. We hold, therefore, that the District Court correctly concluded the verdict did not violate Harris' constitutional right to equal protection and did not abuse its discretion in denying Harris' motion.

¶26. 4. Did the District Court err in not precluding the State from using Harris' extrajudicial statement for purposes of impeachment at trial?

¶27. At the time of Harris' arrest, he was interviewed by two law enforcement officers and admitted an act of sexual intercourse with Gwen. Prior to trial, Harris moved to suppress his statement on the basis that it was involuntary and obtained in violation of his rights as guaranteed by the Fifth Amendment to the United States Constitution. His motion sought to preclude use of the statement both as substantive evidence of the commission of the charged offenses and for purposes of impeachment should he decide to testify at trial. The District Court concluded that the statement could not be used in the State's case-in-chief because it was involuntary, and granted that portion of Harris' motion. The court expressly stated that its limited suppression order did not address whether Harris' statement could be used by the State for impeachment purposes in the event Harris testified at trial. Harris never requested a further ruling from the court on this issue either prior to or during trial.

¶28. The State complied with the suppression order at trial and did not elicit any testimony during its case-in-chief regarding Harris' admission that he had sexual intercourse with Gwen. Harris testified at trial that he had never had sexual intercourse with Gwen and, during his direct examination, his attorney inquired regarding the statement he made when arrested that he had committed one act of sexual intercourse with Gwen. Harris testified that the prior statement was false. On cross-examination, the State questioned Harris further regarding his prior statement. Harris contends on appeal that the District Court erred in failing to suppress the use of his prior statement for impeachment purposes.

¶29. The State asserts that Harris waived his right to raise this issue on appeal because he introduced evidence of the prior statement himself without requesting a further ruling from the District Court regarding the admissibility of the statement for impeachment purposes. In response, Harris relies on State v. Ingraham, 1998 MT 156, 966 P.2d 103, 55 St.Rep. 611, and State v. Fuhrmann (1996), 278 Mont. 396, 925 P.2d 1162, in arguing that his pretrial motion to suppress was sufficient to preserve this issue for appeal without a further motion or objection at trial.

¶30. In both Ingraham and Fuhrmann, we held that the filing of a pretrial motion *in limine* seeking to exclude evidence was sufficient to preserve the defendant's objection to the admission of the evidence for appeal and the defendant was not required to make an additional objection when the evidence was offered at trial. Ingraham, ¶ 36; Fuhrmann, 278 Mont. at 403, 925 P.2d at 1166-67. In those cases, however, the trial courts specifically denied the defendants' motions prior to trial. Ingraham, ¶ 30; Fuhrmann, 278 Mont. at 403, 925 P.2d at 1167. Thus, because the courts had made their determinations as to the admissibility of the evidence at issue, there was no need for a further objection.

¶31. Here, the District Court did not make a pretrial determination regarding whether Harris' statement could be used for impeachment purposes. Essentially, the court reserved its ruling on the motion for a later time, as authorized by § 46-13-104 (1), MCA. Harris did not request a ruling on his motion thereafter and, consequently, when he testified regarding the content of his prior statement, he waived his objection to its admissibility for use as impeachment. As a result, and unlike the situations presented in Ingraham and Fuhrmann, Harris' pretrial motion to suppress did not preserve his argument for appeal.

¶32. Furthermore, Harris' testimony about the prior statement during direct examination brought the statement into evidence by his own volition. We will not put a district court in error for an action in which the appealing party acquiesced or actively participated. See State v. Clay, 1998 MT 244, ¶ 24, 967 P.2d 370, ¶ 24, 55 St. Rep. 1014, ¶ 24.

¶33. We conclude that Harris waived his right to appeal the admissibility of his statement for use as impeachment and we decline to address this issue further.

¶34. Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson specially concurs.

**¶35. I concur with the Court's opinion as to Issues 2, 3 and 4. I concur with the result reached as to Issue 1, but not on the basis expressed in the Court's opinion. Rather, on this issue, I would reach and rule on the merits of Harris' argument.**

**¶36. In *State v. Weaver*, 1998 MT 167, 964 P.2d 713, 55 St.Rep. 668, we addressed, via plain error analysis, the same issue raised here by Harris. *Weaver*, ¶¶ 22 through 40. Harris was tried in December 1997, and, accordingly, because *Weaver* was handed down on July 1, 1998, neither Harris, his counsel nor the trial court had the benefit of our decision. Having addressed the same unanimity instruction issue in *Weaver* on the basis of the plain error rationale set out in *State v. Finley* (1996), 276 Mont. 126, 915 P.2d 208, I can see no logical reason why we should not also do the same thing**

here.

**¶37. Having said that, I would, nevertheless, hold that a specific (as opposed to a general) unanimity instruction was not warranted in this case. In *Weaver*, we held that a specific unanimity instruction is required in cases where different criminal acts are charged in one count. In other words, the jury is to be instructed that it must reach a unanimous verdict on at least one specific act for each count. *Weaver*, ¶¶ 38-40.**

**¶38. Notwithstanding our adoption of this general rule, we also recognized an exception where**

the criminal acts are so closely connected that they form part of one and the same transaction, and thus one offense. Thus, "[s]eparate acts may also result in but one crime if they occur within a relatively short time span . . . ".

*Weaver, ¶ 35 (citing People v. Gordon (1985), 165 Cal.App.3d 839, 854-55, 212 Cal.Rptr. 174, 184-85). In these sorts of cases, the general unanimity instruction will suffice. See Weaver, ¶ 29.*

**¶39. In my view, this "continuous course of conduct" exception applies in the case *sub judice*. Here, the record reflects that Harris had sexual relations with Gwen commencing shortly after her 13th birthday and on a regular basis for eight years thereafter. While Gwen testified that Harris' began having sex with her a couple of months after she began menstruating at age 13 and that the last act of sex occurred on January 1, 1997, she could not otherwise remember intervening specific dates that Harris had sex with her. Unlike the victims in *Weaver,* the sexual assaults on Gwen involved more that a few discreet incidents. See *Weaver,* ¶¶ 7-17, 36. Gwen testified that Harris demanded sex from her frequently, as often as two to four times per week whenever her mother and brother were away from their isolated, backwoods home. For the most part Harris would either physically force her, intimidate her or frighten her into having sex with him on these occasions. As the District Court noted in its sentencing order "[t]he Defendant held his adopted daughter as his virtual 'sex slave' for a number of years in a remote location, isolating her from her friends, and preventing her from attending school." These facts distinguish the instant case from *Weaver*.**

¶40. I conclude that Harris' criminal acts were so closely connected that they formed part of one and the same transaction, and thus one offense--i.e. that his acts of incest were a "continuous course of conduct." Harris was only charged with and convicted of one count of incest, albeit that "between November 1988 and January 1, 1997, . . . [he] . . . on many occasions knowingly had sexual intercourse with Gwen . . . his adopted daughter." On the evidence and record here there was no genuine possibility of jury confusion or that Harris would be convicted as a result of different jurors concluding that he committed different acts. See *Weaver,* ¶ 34 (quoting *United States v. Echeverry* (9th Cir. 1983), 719 F.2d 974, 975). While Harris' criminal conduct occurred over an eight year period--and, thus, arguably, not over a short time span-- his repeated illegal acts during that period were so frequently perpetrated and so closely connected as to be properly viewed as a single continuous or running offense.

¶41. Accordingly, on the record here, I would hold that the trial court did not err in failing to give a specific unanimity instruction. I would affirm as to Issue 1 on this basis.

/S/ JAMES C. NELSON

Justices W. William Leaphart and Jim M. Regnier join in the foregoing special concurrence.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER