JUSTICE RICE
dissenting.
¶59 Reversal of this matter for the reasons stated in Justice Nelson’s opinion is unnecessary and condones abuse of the legal system. I dissent.
¶60 In State v. Rodarte, 2002 MT 317, 313 Mont. 131, 60 P.3d 983, we addressed the permissible scope of a prosecutor’s closing argument and held: *177 Rodarte, ¶ 14. Here, notwithstanding defense counsel’s perception, the prosecutor did not comment on the Defendants failure to testify, but rather the failure of “persons other than the defendant” to testify.
*176 While it is improper for the prosecution to comment on the failure of a defendant to testify on his own behalf, the prosecution is permitted to point out facts at issue which could have been controverted by persons other than the defendant, but were not.
*177 ¶61 This distinction is further understood when the context of the prosecutor’s comments is considered. The prosecutor had offered evidence of the traffic to and from Defendant’s home in support of the drug distribution charges. To defeat this evidence, the Defendant testified that these frequent visits were made by well-wishers who were giving her support in her time of bereavement. Thus, the Defendant had not relied upon her presumption of innocence-she had instead affirmatively offered an alternate explanation of the State’s evidence. It was this proffered defense which the prosecutor commented upon, including the failure of those in Defendant’s household to controvert the State’s facts:
We did not hear from Amber, her daughter. We did not hear from Mike, her son. We did not hear from Miranda, the other girl who lived there for the last three years. George Garcia, we didn’t hear from George Garcia. Did we hear from Doug in Drummond? Didn’t hear from Doug. [Emphasis added.]
Thus, arguably, the prosecutor’s attack was not made upon Defendant’s presumption of innocence, but upon the defense and testimony which the Defendant had affirmatively offered, and the failure of persons to testify who could have controverted the State’s evidence.
¶62 These circumstances illustrate the impropriety of exercising plain error review in this case. Defense counsel elected not to object to the prosecutor’s closing for a reason: so he could use the prosecutor’s comments against the State during his own closing argument. Thus, he sat quiet during the prosecutor’s closing, when an objection would have immediately brought the matter to the judge’s attention, and instead sought to discredit the State’s case by raising the issue in closing. If it would have worked, and the jury had acquitted, this case would not be before us.
¶63 However, it failed, and now Defendant wants to have her cake and eat it too. This Court should not countenance such manipulations and abuse of the legal system. The trial judge could well have addressed the problem at the time, but it was defense counsel’s choice to take the issue from the judge for his own purposes. When a defendant participates in trial error, he cannot then challenge the error on appeal. “We will not put a district court in error for an action in which the appealing party acquiesced or actively participated.” State v. *178 Harris, 1999 MT 115, ¶ 32, 294 Mont. 397, ¶ 32, 983 P.2d 881, ¶ 32 (citing State v. Clay, 1998 MT 244, ¶ 24, 291 Mont. 147, ¶ 24, 967 P.2d 370, ¶ 24).
¶64 This dissent is criticized as based on “pure speculation.” See ¶ 46. To the contrary, we need not speculate that the defense counsel was aware of the presumption of innocence issue-counsel used the issue in his closing. We need not speculate that defense counsel decided not to object to the prosecution’s closing-the record clearly demonstrates that no objection was made. We need not speculate that defense counsel used the issue to attempt to persuade the jury to acquit the defendant-the record clearly illustrates this as well. This issue was not properly preserved for appeal because defense counsel chose instead to gamble with it at trial. Indeed, we need only ask why plain error review should be exercised in a situation in which the error is not “plain,” but, rather, where the defense clearly used the issue for its own purposes at trial and now seeks to avoid the consequences of that decision on appeal.
¶65 I now turn to Justice Leaphart’s concurring opinion, which concludes that reversal is appropriate because “defense counsel had an obligation to request the instruction that the jury view Jordan’s accomplice testimony with suspicion.” ¶ 53.
¶66 Section 26-1-303, MCA (emphasis added), provides that the “jury is to be instructed by the court on all proper occasions” that the testimony of “a person legally accountable for the acts of the accused” is to be viewed with distrust. We held in State v. Johnson (1993), 257 Mont. 157, 848 P.2d 496, that the plain wording of the statute does not require this instruction to be given in every case involving an accomplice, and overruled the contrary holding in State v. Laubach (1982), 201 Mont. 226, 653 P.2d 844, as conflicting with the statute. Johnson, 257 Mont. at 162-63, 848 P.2d at 499. We recently explained in Kougl why an accomplice instruction was not appropriate in Johnson:
[I]n Johnson there was a record-based justification for not asking for an instruction on accomplice testimony. Johnson claimed that he was not at the scene of the crime, and asking the jury to view his accuser as an “accomplice” would contradict this defense. Johnson, 257 Mont. at 163, 848 P.2d at 499. Therefore, there was a tactical reason for not asking for the jury instruction. It was proper for this Court to ask “why” and then answer that question from the record.
*179 Kougl, ¶ 18. Concluding that Kougl’s trial counsel “could have no plausible explanation” for failing to request an accomplice instruction under the evidence in that case, we distinguished Johnson and reversed Kougl’s conviction. Kougl, ¶¶ 24, 27.
¶67 The concurring opinion suggests that we revisit Johnson, believing its rationale “illogical,” because “an accomplice instruction would never be strategically appropriate, as it would always contradict the assertion of innocence” by a defendant who goes to trial. ¶ 56. However, I believe this case illustrates well why the Johnson rule should be retained, and that there is clear reason why the statute does not require the instruction to be given in all such cases.
¶68 First, Newman and Jordan were not charged with the same offenses at the time of trial. The concurring opinion points to Jordan’s testimony that he helped Newman sell drugs in an effort to link Jordan to the charges against Newman for criminal distribution of dangerous drugs and possession of drugs with intent to distribute. However, Jordan was charged with theft, drug possession, possession of drug paraphernalia and aggravated burglary, none of which involved distribution of or the intent to distribute drugs. Thus, the parties were not accomplices by virtue of the respective charges filed against them.
¶69 Second, and more critically, is the evidence. The sum total of Jordan’s testimony upon which Newman and the concurring opinion rely for the proposition that Jordan “helped Newman sell drugs,” ¶ 57, consists of the following:
Defense Counsel: And were you selling drugs?
Jordan: No, not really, I don’t think. Maybe once or twice for her.
¶70 This brief, ambiguous comment is insufficient to support an assertion that Jordan is “legally accountable for the acts of the accused.” Section 26-1-303(4), MCA. Contrary to Newman’s characterization, Jordan testified that he did not sell any drugs, or, at best, that “maybe” he had, but was not sure. How different this case is from Kougl, where we noted that “[t]he parties are agreed that Loney, Pool, and Fassler were accomplices” with Kougl, Kougl, ¶ 20, and, indeed, the evidence overwhelmingly supported that conclusion. Kougl, ¶ 8. “[A] criminal defendant is entitled to jury instructions that cover every issue or theory having support in the evidence.” State v. Beavers, 1999 MT 260, ¶ 23,296 Mont. 340, ¶ 23,987 P.2d 371, ¶ 23. Obviously, the converse is not true: a defendant cannot be forced to bear an instruction which is not supported by the evidence.
*180 ¶71 Thirdly, there is a legitimate, strategic component to the giving, and thus, the requesting, of this instruction. Here, an accomplice instruction would appear to have been completely inconsistent with Newman’s defense. She testified, and her theory was, that the drugs and paraphernalia seized in the house were not hers, and that Jordan’s testimony about her sale of drugs was false:
Defense Counsel: ... So it’s your testimony that none of this drug paraphernalia is yours; is that correct?
Newman: That is correct.
Defense Counsel: What about the drugs themselves?
Newman: No, sir, they are not mine.
Defense Counsel: Were you using those drugs or selling those drugs, or did you participate with other people in selling those drugs for money?
Newman: No, I have never sold drugs.
Defense Counsel: Now, you’ve heard Randy [Jordan]’s testimony that he said he saw you sell drugs to the people coming into the house or that you would drive somewhere to locations and sell drugs; you’ve heard that testimony?
Newman: Yes, I have.
Defense Counsel: Is that true?
Newman: No, it is not.
Defense Counsel: Did you ever go with [Jordan] anywhere to sell drugs or -
Newman: No, sir.
¶72 Given this testimony and Newman’s theory, it would have been supreme incongruence for Newman to ask that the jury be instructed to view Jordan’s testimony with distrust for being legally accountable for acts which Newman adamantly claimed never occurred. Unlike the record in Kougl, the evidence here presented a legitimate strategic reason for declining to request the instruction. Alternatively, Newman’s trial counsel could have requested the accomplice instruction for purposes of attacking Jordan’s testimony. However, that decision would have required taking a risk-that the jury would recognize the incongruence between Newman’s argument that Jordan was an accomplice and her theory that the acts had not occurred. “[I]t is not proper to give an accountability instruction [based upon § 26-1-303(4), MCA] where it is not supported by the evidence and is inconsistent with the defendant’s claim of innocence.” State v. Hall, 2003 MT 253, ¶ 30, 317 Mont. 356, ¶ 30, 77 P.3d 239, ¶ 30 (emphasis *181 added). On matters of strategy, we cannot second-guess counsel. “[W]e will not find ineffective assistance of counsel ... in counsel’s tactical decisions.” Weaver v. State, 2005 MT 158, ¶ 25, 327 Mont. 441, ¶ 25, 114 P.3d 1039, ¶ 25.
¶73 The concurring opinion’s statement that “[t]o hold that an accomplice instruction is inappropriate when a defendant maintains his innocence is illogical” (¶ 56) may be correct when viewed in isolation. However, the statement does not fully circumscribe the law. Under the statute and our cases, the accomplice instruction is inappropriate when it is inconsistent with the particular theory or evidence a defendant presents in support of his claim of innocence. In those cases, requesting the instruction becomes a tactical matter. In Kougl, the case as presented left no room for a tactical decision, and the instruction was appropriate. Here, the opposite was true.
¶74 I would affirm.