No. 03-195

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 75

STATE OF MONTANA,

          Plaintiff and Respondent,

  v.

J. C.,

          Defendant and Appellant.


APPEAL FROM:    District Court of the Fourteenth Judicial District,
                    In and For the County of Musselshell, Cause No. DC 2001-20,
                    Honorable Loren Tucker, Presiding Judge


COUNSEL OF RECORD:

          For Appellant:

                John Bohlman, Attorney at Law, Roundup, Montana

          For Respondent:

                Honorable Mike McGrath, Attorney General; Pamela P. Collins,
                Assistant Attorney General; Helena, Montana

                Catherine Truman, County Attorney, Roundup, Montana


                       Submitted on Briefs:  January 13, 2004

                                  Decided:  March 30, 2004


Filed:

                    _____
                              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     J.C. appeals multiple issues regarding his trial and sentence for the offense of felony incest. We affirm. The issues on appeal are as follows:

¶2     1.     Whether J.C.'s trial counsel was ineffective for (a) challenging R.C.'s credibility on cross-examination and (b) failing to develop testimony regarding J.C.'s alleged mental impairment?

¶3     2.     Whether the District Court erred when it allowed testimony during J.C.'s sentencing hearing from a counselor who conducted a psychosexual evaluation of J.C. for a different case?

¶4     3.     Whether the District Court augmented J.C.'s sentence because he failed to admit he committed the offense?

¶5     4.     Whether J.C., in failing to object to the Presentence Investigation (PSI) and psychosexual evaluation in the District Court, waived his right to object to these matters on appeal?

¶6     5.     Whether the District Court erred when it imposed restitution?

Factual and Procedural Background

¶7     J.C. was charged by Information with the offense of Incest, a felony, in violation of § 45-5-507, MCA. The charge was based on allegations that from May 1999 through May 2001, J.C. had sexual contact with R.C., J.C.'s son. J.C. appeared in court with his court-appointed counsel and pleaded "not guilty" to the charges.

¶8    J.C. filed a motion to suppress statements he made to a counselor in conjunction with a different child abuse and neglect case involving R.C.  Subsequent to the motion being filed, the court granted J.C.'s request to have retained counsel substituted for his appointed counsel.  During this same time period, J.C. married R.C.'s mother.  In February 2002, the court held a hearing regarding the statements J.C. made to the counselor.  J.C. appeared with his retained counsel for this hearing.  The court denied J.C.'s motion to suppress the statements.

¶9    On May 1, 2002, a jury trial began.  At the time of trial, R.C. was six years old and in kindergarten.  He had been removed from his parents' home approximately one year earlier and had been living with a foster family since that time.  The evidence the State presented against J.C. at trial included the following.  R.C. testified that J.C. placed his hands and mouth on R.C.'s "private area" numerous times.  A licensed clinical professional counselor to whom R.C. was referred by the Department of Public Health and Human Services soon after being removed from his parents' home also testified.  This counselor stated that she observed R.C. display behaviors and make statements which indicated he had been sexually abused by his father.  A licensed clinical psychologist who began treating R.C. approximately three months after he was removed from his parents' home also testified.  She testified that she evaluated R.C. and concluded that he exhibited behaviors consistent with that of a sexually-abused child.

¶10    J.C. was found guilty of the offense of Incest in violation of § 45-5-507, MCA.  The court ordered a PSI be conducted prior to sentencing.  The court required a psychosexual

examination of J.C. in order to complete the PSI. At the sentencing hearing, the court concluded J.C. was a Level III sexual offender with a high risk of re-offending. The court sentenced him to fifty years in the Montana State Prison with all but twenty years suspended, subject to certain conditions. J.C. was served with a Notice of Right to Apply for Sentence Review. J.C. filed a notice of appeal. J.C.'s retained counsel was permitted to withdraw from J.C.'s case and on February 6, 2003, the District Court appointed counsel to represent J.C. for his appeal.

Discussion

¶11 Issue 1: Whether J.C.'s trial counsel was ineffective for (a) challenging R.C.'s credibility on cross-examination and (b) failing to develop testimony regarding J.C.'s alleged mental impairment?

¶12 We review an allegation of ineffective assistance of counsel employing the two-part test from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Dawson v. State*, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20. A defendant must first demonstrate "that his counsel's performance was not within the range of competence demanded of attorneys under similar circumstances." *State v. Sellner* (1997), 286 Mont. 397, 400, 951 P.2d 996, 998. Counsel's performance must be deficient "with a showing of errors so serious that assistance was not effective[.]" *State v. Gallagher*, 2001 MT 39, ¶ 7, 304 Mont. 215, ¶ 7, 19 P.3d 817, ¶ 7. Second, a defendant must prove that absent counsel's deficient representation, there is a reasonable probability that "the result of the proceeding would have been different." *Dawson*, ¶ 20. "A reasonable probability is a

4

probability sufficient to undermine confidence in the outcome." *Dawson*, ¶ 20 (citation omitted).

¶13   A strong presumption exists that counsel has "rendered adequate assistance of counsel and made all significant decisions in the exercise of reasonable professional judgment." *State v. Weldele*, 2003 MT 117, ¶ 70, 315 Mont. 452, ¶ 70, 69 P.3d 1162, ¶ 70 (citation omitted). "Arguably inadequate professional performance will not warrant overturning a judgment if the counsel's error had no effect on the judgment." *Weldele*, ¶ 70.

¶14   We have recognized that in "certain circumstances, counsel's performance may be so deficient that a defendant need not prove the second element of the *Strickland* test." *Gallagher*, ¶ 8. In such a case, the "prejudice may be presumed without inquiry into the actual conduct at trial." *Gallagher*, ¶ 8. One type of situation we have recognized as establishing the presumption of prejudice is an irreconcilable conflict between an attorney and his or her client caused by a complete lack of communication. *Gallagher*, ¶ 13.

Challenging R.C.'s credibility on cross-examination

¶15   J.C. claims his counsel was ineffective for questioning R.C. about whether R.C. had been improperly influenced or coached to change his testimony. J.C. asserts that he was prejudiced because this questioning opened the door to rebuttal testimony regarding R.C.'s prior consistent statements. This rebuttal testimony was allowed because defense counsel challenged R.C.'s credibility on the basis of improper influence. Rule 801, M.R.Evid. J.C. claims that without this rebuttal testimony, he would have been entitled to a directed verdict of not guilty at the end of the State's case-in-chief. J.C. further contends that the Court need

5

not even determine whether J.C. was "prejudiced" by his attorney's conduct because his attorney's representation was so deficient he should not be required to satisfy both prongs of the *Strickland* test.

¶16 The State counters that the cross-examination of R.C. had a beneficial purpose and was appropriate; counsel's questioning allowed the jury to infer that R.C. was improperly influenced to change his testimony during the court recess. Without the questioning, the jury would not have known that R.C. had spoken with several people associated with the State during the courtroom break.

¶17 R.C. initially testified that he did not tell anybody about what J.C. did to him. Although R.C. stated that someone touched his "privates," he would not say who had done it. He also denied that anyone put his or her mouth on his privates. At this point in R.C.'s testimony, the State requested a recess and R.C. left the courtroom. In the judge's chambers following the recess, the prosecutor stated that she had talked with R.C. during the recess. R.C. told the prosecutor that he wanted to sit on his foster mother's lap for the remainder of his testimony because he felt comfortable there. J.C.'s counsel objected to R.C. sitting on his foster mother's lap. J.C.'s counsel noted it appeared the State was attempting to have R.C. change his testimony by asking the same questions in a different environment (with R.C. sitting on his foster mother's lap). The court responded that J.C.'s counsel could examine "all the witnesses who appear about what contacts they've had and when those contacts have occurred and, if you believe that coaching has occurred, you may certainly inquire about those things."

6

¶18    The trial then resumed with R.C. sitting on his foster mother's lap for the remainder of his testimony.  R.C.'s testimony changed from before the recess in that he told the court J.C. was the person who touched his privates with his hands and mouth.  R.C. said that it happened a lot when no one else was around.  R.C. stated that he told his mother about the behavior and she did not do anything about it.  R.C. also said that J.C. told R.C. not to tell.  R.C. believed that J.C. would be punished if he told.  R.C. said that he told his counselor about the incidents.

¶19    J.C.'s counsel cross-examined R.C. about his change in testimony.  He asked R.C. who he talked to during the break and if these people told him to say anything different from what he said before.  R.C. responded that he was not telling the truth earlier but that now he was.  On rebuttal, the State introduced R.C.'s prior consistent statements to others, pursuant to Rule 801(d)(1)(A) and (B), M.R.Evid.  Although J.C.'s counsel objected, the court allowed witnesses to testify about prior statements R.C. had given.

¶20    The State called R.C.'s counselor as a rebuttal witness.  She testified that during one of her interviews with R.C., he told her that J.C. had touched him several times and put his mouth on R.C.'s private parts.  The State also called the licensed clinical psychologist who treated R.C.  She said that R.C. told her that J.C. went to jail because "he was sucking me and stuff" in his crotch area, what R.C. called his "private part."

¶21    The type of questioning that J.C.'s counsel engaged in during cross-examination of R.C. was not deficient performance that rendered counsel's representation ineffective. *Gallagher*, ¶ 8.  Defense counsel's decision to question R.C. about his change in testimony

7

reflects a decision made in the exercise of reasonable professional judgment. *Weldele*, ¶ 70. His counsel would have been remiss in his duty to represent J.C. if he ignored the complete change in R.C.'s testimony. J.C.'s counsel was attempting to demonstrate that any change in R.C.'s testimony which occurred after the court recess may have been caused by improper influence from the State or persons associated with the State. This is proper trial strategy and does not show that J.C.'s counsel was ineffective. *Gallagher*, ¶ 7. His counsel's performance was within the range of competence demanded of attorneys under similar circumstances. *Sellner*, 286 Mont. at 400, 951 P.2d at 998. J.C. has failed to satisfy the first prong of the *Strickland* test. Because we have determined that he must meet both prongs of the *Strickland* test, we need not address the second prong. Accordingly, we conclude that his counsel was not ineffective when he questioned R.C. regarding his change in testimony.

Testimony regarding J.C.'s alleged mental impairment

¶22    J.C.'s second argument that he received ineffective assistance of counsel grows from the fact that his counsel did not present evidence regarding J.C.'s mental capacity. As a result, J.C. claims he received a harsher sentence. On appeal, J.C. relies on paperwork that is not part of the trial court's record. J.C. also alleges that his counsel did not assure that J.C. understood his right to sentence review.

¶23    In support of these arguments, J.C. cites *State v. Jefferson*, 2003 MT 90, 315 Mont. 146, 69 P.3d 641, for the proposition that "[w]hen an ineffective assistance of counsel claim is based on facts of record, it is properly raised on direct appeal. Normally, the record on appeal must adequately document why counsel acted in a particular manner in order for this

8

Court to determine whether counsel's action falls below the reasonable standard for professional conduct." *Jefferson*, ¶ 49 (internal and external citations omitted). J.C. cites the entire sentencing transcript for the proposition that his counsel failed to offer any evidence regarding J.C.'s alleged mental impairment.

¶24 The State argues that J.C. has failed to comply with Rule 23(a)(4) and (e) of the Montana Rules of Appellate Procedure because he has not referenced specific sections of the record. The State also notes that he is asking us to consider documents that are not part of the record on appeal. For these reasons, the State requests that we strike the documents which are not part of the appellate record and not consider J.C.'s arguments.

¶25 On appeal, we consider only the district court record, including "[t]he original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court . . . ." Rule 9(a), M.R.App.P. "[P]arties on appeal are bound by the record and may not add additional matters in briefs or appendices." *State v. MacKinnon*, 1998 MT 78, ¶ 15, 288 Mont. 329, ¶ 15, 957 P.2d 23, ¶ 15 (citation omitted). As J.C. recognized in the section he cited from *Jefferson*, ineffective assistance of counsel claims that can be decided upon the record are appropriate for consideration on direct appeal. *Jefferson*, ¶ 49. When ineffective assistance of counsel claims require consideration of factual matters outside the record, the claims are appropriately raised in a petition for postconviction relief. *In re Petition of Hans*, 1998 MT 7, ¶ 43, 288 Mont. 168, ¶ 43, 958 P.2d 1175, ¶ 43.

¶26 In the present case, we will not address J.C.'s claim regarding ineffective assistance due to his counsel's failure to present evidence of J.C.'s alleged mental impairment. The

9

documents J.C. has attached to his appellate brief are not part of the District Court record and will not be considered on appeal. Rule 9(a), M.R.App.P. Furthermore, we will not address J.C.'s claim that his counsel did not sufficiently explain J.C.'s option of applying for sentence review because this argument is also outside the scope of the District Court record. Rule 9, M.R.App.P.

¶27 J.C. recognizes that his claim of ineffective assistance of counsel could still be presented through a petition for postconviction relief. Because J.C. relies on documents and facts outside the record, this claim is more appropriately addressed in a petition for post-conviction relief. *In re Petition of Hans*, ¶¶ 41, 43.

¶28 Issue 2: Whether the District Court erred when it allowed testimony during J.C.'s sentencing hearing from a counselor who conducted a psychosexual evaluation of J.C. for a different case?

¶29 J.C. argues it was reversible error for the District Court to take judicial notice of the counselor's testimony given in an earlier related abuse and neglect proceeding. The counselor did not testify at J.C.'s trial in the instant case; she testified only at the sentencing hearing. At sentencing, the court allowed her to testify regarding portions of the psychosexual examination she had previously conducted for an abuse and neglect case involving R.C.

¶30 J.C. claims that the counselor should not have been allowed to testify at this sentencing hearing regarding the fact that J.C. told her that he received two years probation for a sexual intercourse without consent charge in 1992. That charge resulted in a two-year

deferred prosecution. J.C.'s statement to this counselor was in contrast to the statement J.C. made to the sex-offender evaluator in the present case that the previous charge had been "thrown out."

¶31 We have previously stated that "the rules of evidence are not applicable or controlling in sentencing hearings." *State v. Race* (1997), 285 Mont. 177, 180, 946 P.2d 641, 643 (citation omitted). A sentencing court is allowed "to have the fullest information possible concerning the defendant's life and characteristics, so that the court is able to individualize punishment." *Race*, 285 Mont. at 180, 946 P.2d at 643. Thus, a statement that is covered by the psychotherapist-patient privilege may be inadmissible at trial but is admissible at a sentencing hearing. *Race*, 285 Mont. at 180-81, 946 P.2d at 643.

¶32 Based on the foregoing, we conclude that the District Court, in seeking information to individualize J.C.'s punishment, did not err in allowing the counselor to testify at the sentencing hearing. *Race*, 285 Mont. at 180, 946 P.2d at 643. Furthermore, the information testified to, that the prior charge was not "thrown out" but resulted in a deferred prosecution, was a matter of public record and did not constitute a violation of a privileged communication.

¶33 Issue 3: Whether the District Court augmented J.C.'s sentence because he failed to admit he committed the offense?

¶34 J.C. claims that the trial court committed reversible error because it augmented his sentence when he did not show remorse and would not admit his guilt. J.C. contends the court violated *State v. Shreves*, 2002 MT 333, 313 Mont. 252, 60 P.3d 991, and increased

11

J.C.'s sentence because the court determined J.C. refused to accept responsibility for his conduct and refused to be accountable for his behavior.

¶35 The State maintains that a sufficient basis existed for J.C.'s sentence and the sentence was therefore appropriate. The State cites *Shreves* for the proposition that a sentencing court can consider any evidence relating to the crimes a defendant is convicted of, including "the defendant's character, background, history, mental and physical condition, and any other evidence the court considers to have probative force." The State contends that the District Court properly considered all evidence before it imposed the sentence. The evidence included the risk to society that J.C. may re-offend, J.C.'s prospects for rehabilitation, his character, background, history, and mental and physical functioning. The court specifically stated that "even before or without consideration of whether you're willing to admit your conduct or not, it is apparent that you are not a favorable or an optimistic prospect for rehabilitation through treatment because of your own personal characteristics."

¶36 We review the imposition of a sentence solely for legality, determining whether the sentence is within the statutory parameters. *State v. Beavers*, 2000 MT 145, ¶ 6, 300 Mont. 49, ¶ 6, 3 P.3d 614, ¶ 6. "[A] sentencing court may consider any evidence relevant to a defendant's sentence, including evidence relating to the crime," the defendant's background history, his character, his mental and physical condition, and any other evidence the court views as having probative force. *Shreves*, ¶ 13.

¶37 In *Shreves*, we determined that the court considered the defendant's lack of remorse as a general factor in determining the entire sentence; the sentence and parole restriction

were based in significant part on the defendant's refusal to admit guilt. *Shreves*, ¶ 7. Shreves testified at trial but did not testify at his sentencing hearing. His counsel made clear Shreves maintained his innocence and planned an appeal. The court sentenced Shreves noting that the sentence was based in part on the fact that Shreves showed no remorse, no accountability, and did not explain why the crime occurred. We determined the court "based its sentence in large part on Shreves' lack of remorse and [the court] analogized that lack of remorse to Shreves' silence." *Shreves*, ¶ 20. We went on to note that "[t]he court then based its sentence on Shreves' failure to 'give' the court something about why the crime happened." *Shreves*, ¶ 20. We concluded that while "lack of remorse can be considered as a factor in sentencing [and the effect this lack of remorse may have on prospects of rehabilitation], we cannot uphold a sentence that is based on a refusal to admit guilt." *Shreves*, ¶ 20. We made clear, however, that a "court can consider as a sentencing factor a defendant's lack of remorse as evidenced by any admissible statement made by the defendant pre-trial, at trial, or post-trial . . . or gleaned, without more, from the manner of the commission of the offense as demonstrated by the evidence at trial or from other competent evidence properly admitted at the sentencing hearing." *Shreves*, ¶ 21.

¶38    J.C. was convicted of Incest, a felony, in violation of § 45-5-507, MCA. Because R.C. was under sixteen years of age (six years old at the time of trial) and J.C. was three or more years older than R.C. (J.C. was born on May 23, 1960), the sentence for this offense is imprisonment for life or a term of four to one hundred years, and a possible fine of not more than $50,000.00. Section 45-5-507(4), MCA. J.C. was sentenced to fifty years in the

Montana State Prison with all but twenty years suspended subject to certain terms and conditions. J.C. was also sentenced to pay reimbursement in the amount of $1,736.00 for his public defender. J.C. did not testify at the sentencing hearing, although he did testify at his trial.

¶39 The record in this case reflects that the court considered many relevant factors when it sentenced J.C. These factors included the nature and evidence of J.C.'s crime, his character, background, history, and mental and physical functioning. *Shreves*, ¶ 13. J.C. repeatedly sexually abused his very young male child. J.C. provided several inconsistent statements including those involving alcohol use, drug use, and past allegations of sexual assault. The court noted that J.C.'s absolute denial of all allegations was troubling. J.C. had stated that the sexual intercourse without consent charge had been "thrown out" when in fact he was given a two-year deferred sentence. The court stated in its Findings of Fact and Conclusions of Law that "[t]he defendant's personal attributes of being other than honest, his manipulations, and his refusal to accept any responsibility and to presume that every other single person and the jurors in our system and society are wrong and he is right only further confirms that" he is a high risk to society, particularly to the safety of young children. His psychological testing established that he has a strong belief system consistent with sexual abusers or pedophiles. The court concluded that, based on the psychosexual examination conducted in the present case and other unrefuted and credible evidence, J.C. is a predatory sexual offender with a strong deviant sexual interest in children who is at high risk for re-offending.

14

¶40 Considering the foregoing, the record does not reflect that J.C.'s sentence was in large part based upon the fact that he refused to take responsibility and admit his crime. *Shreves*, ¶ 13. This was only one of the myriad considerations of the court when it fashioned J.C.'s individualized sentence. The situation is distinguishable from that in *Shreves* because this court did *not* base its sentence in large part upon J.C.'s silence or failure to show remorse. We formulated a narrow rule in *Shreves* that "a sentencing court may not draw a negative inference of lack of remorse from the defendant's silence at sentencing where he has maintained, throughout the proceedings, that he did not commit the offense of which he stands convicted–i.e. that he is actually innocent." *Shreves*, ¶ 22. However, we also made clear that the trial court can consider lack of remorse, as evidenced by any admissible statement made by the defendant or gleaned from the manner of the commission of the offense as demonstrated by the evidence admitted at trial or at the sentencing hearing, when sentencing a defendant. *Shreves*, ¶ 21.

¶41 The record does not reflect that the court considered J.C.'s silence at the sentencing hearing as lack of remorse. The record similarly does not reflect that the court augmented J.C.'s sentence because of this silence. The court considered competent evidence admitted at trial and at the sentencing hearing, including the psychosexual evaluation, the testimony of numerous witnesses, J.C.'s self-reported lack of social skills, his lack of significant work skills, his dishonesty regarding the sexual intercourse without consent charge being "thrown out" when in fact he received a two-year deferred sentence, the safety of society (especially young children), and J.C.'s prospects for rehabilitation. His sentence was based on the

15

evidence presented in the District Court at trial and at sentencing; it was not based significantly on his refusal to admit the crime. *Shreves*, ¶ 13. His sentence was clearly within the statutory boundaries for such an offense and sufficiently supported by the various factors the court considered. Section 45-5-507(4), MCA; *Beavers*, ¶ 6. We conclude that the District Court did not sentence J.C. more harshly because he failed to admit he committed the charged offense. Accordingly, we affirm the sentence of the District Court.

¶42 Issue 4: Whether J.C., in failing to object to the Presentence Investigation and psychosexual evaluation in the District Court, waived his right to object to these matters on appeal?

¶43 J.C. alleges that the PSI report is not statutorily complete, in accordance with § 46-18-112(1)(a), MCA. J.C. also claims that testing conducted on him for the psychosexual evaluation is insufficient because a properly qualified person did not conduct the testing.

¶44 The State alleges that since J.C. did not object in the trial court to the PSI or the evaluation, he has waived this contention on appeal. *State v. Martinez*, 2003 MT 65, ¶ 17, 314 Mont. 434, ¶ 17, 67 P.3d 207, ¶ 17. The State also contends that the person who conducted the evaluation was properly qualified.

¶45 Montana law is well-established that "it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider." *Martinez*, ¶ 17. Therefore, we will not address an issue raised for the first time on appeal. *Martinez*, ¶ 17. Section § 46-18-111(1), MCA, clearly provides that "[t]he [psychosexual] evaluation

16

must be completed by a sex offender therapist who is a member of the Montana sex offender treatment association . . . ."

¶46 The record reflects that J.C. did not object to the PSI or the qualifications of the therapist in the District Court. Therefore, these issues are not properly before this Court and we will not consider them for the first time on appeal. *Martinez*, ¶ 17. However, we do note that the record reflects that the therapist was qualified to render the evaluation in this case. Section 46-18-111(1), MCA.

¶47 Issue 5: Whether the District Court erred when it imposed restitution?

¶48 J.C. makes a three-fold argument that the District Court erred when it ordered restitution. First, J.C. claims that the court erred because it did not specify an amount of total restitution. Second, he contends insufficient evidence was presented to the court regarding either the amount of pecuniary loss suffered by the victim or the amount of restitution. Third, he asserts that there was insufficient documentation of his financial resources and future ability to pay. J.C. acknowledges that the District Court specified the method of payment (one-third of his prison income, pursuant to § 46-18-244(3)(c), MCA (2002)).

¶49 Despite J.C.'s characterization of the issue, the court did not order any amount for victim restitution. The fees that J.C. was required to pay are *reimbursement* costs for his court-appointed counsel. Therefore, we shall use the term "reimbursement" to describe these fees.

¶50 The PSI stated that J.C. was unemployed, earned $545.00 per month (based on his social security income), and had no assets or debts. At the sentencing hearing, the court

stated that J.C. would be required to reimburse the County for the costs and expenses of his court-appointed counsel "in a sum which I hope and expect that counsel can agree upon." If an agreement was not reached, the court instructed that a hearing would then be held. The court also specified that the amount due in monthly installments would be "$50.00 commencing 30 days after you are released from custody, and one-third of any earnings you receive while you're in prison, in accord with statute, will be required against these sums to defray them."

¶51    The written Judgment and Order of Sentence, filed on December 3, 2002, is consistent with the oral sentence and states that J.C. is to pay reimbursement costs in the amount of $1,736.00 for the services of his public defender. Additionally, the written order provided for a lien against any property J.C. owns to satisfy these costs.

¶52    We review the imposition of a sentence for legality only. *Beavers*, ¶ 6. A sentencing court may require a convicted defendant to pay the costs of his court-appointed counsel. Section 46-8-113(1), MCA. Section 46-8-113(3), MCA, requires that in determining the amount and payment of costs, the court shall take into account the financial resources of the defendant and the nature of the burden that payment of costs will impose.

¶53    The PSI addressed J.C.'s financial resources in the section that listed J.C.'s debt and assets as zero and his monthly income as $545.00. This is sufficient documentation of J.C.'s financial resources and ability to pay. Furthermore, J.C. did not object to the contents of the PSI.

¶54    The written Judgment and Order reflects the financial information listed in the PSI. It also states a specific amount for counsel fees, $1,736.00. No objection to this amount was

18

filed. In the absence of an objection, it can be inferred that counsel agreed upon the amount. *State v. Harris*, 1999 MT 115, ¶ 32, 294 Mont. 397, ¶ 32, 983 P.2d 881, ¶ 32. Moreover, the fact that the record does not reflect that a hearing regarding the fees was ever held further supports the inference that counsel agreed upon the amount contained in the judgment. We will not put the District Court in error for adopting an agreed upon amount. *Harris*, ¶ 32. The District Court did not err when it ordered reimbursement for J.C.'s court-appointed counsel. Section 46-8-113(3), MCA.

¶55  We affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE