DA 09-0230

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 18

IN THE MATTER OF

S.M.S.,

    A Youth.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDJ 07-144
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Krishna Nandlal, Assistant Public Defender, Great Falls, Montana

        For Appellee:

        Hon. Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant
Attorney General; Helena, Montana

        John Parker, Cascade County Attorney; Matthew S. Robertson, Deputy
County Attorney; Great Falls, Montana

Submitted on Briefs:  December 10, 2009

Decided:  February 2, 2010

Filed:

           _____
                           Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     S.M.S. appeals the order of the Eighth Judicial District Youth Court, Cascade County, denying his motion to suppress. We affirm.

¶2     We review on appeal whether the Youth Court properly denied S.M.S.'s motion to suppress his confession.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     R.S., S.M.S.'s father, brought S.M.S. to the Cascade County Sheriff's Office on October 12, 2007, to register S.M.S. as a sex offender. S.M.S. was 16 years old at the time. While at the Sheriff's Office, R.S. told Sergeant Scott Van Dyken that he had caught S.M.S. in the bedroom of S.S., S.M.S.'s six year old sister, a few days earlier. R.S. told Sergeant Van Dyken that he did not think anything had happened because S.M.S. had been in S.S.'s room only for a very short time. Sergeant Van Dyken chose to refer the incident to Deputy Brad Robertson for investigation.

¶4     Deputy Robertson drove to S.M.S.'s home later that day. He found S.M.S. there alone. Deputy Robertson explained to S.M.S.'s neighbor that he was taking S.M.S. in for questioning. Deputy Robertson did not inform S.M.S. that he was investigating S.M.S. for a possible sex crime. The neighbor told Deputy Robertson that S.M.S.'s parents were at work. Deputy Robertson made three attempts to call S.M.S.'s parents, but he could not reach them. He did not leave messages for S.M.S.'s parents. Deputy Robertson gave his business card to the neighbor and requested that S.M.S.'s parents contact him if they returned home.

2

¶5     Deputy Robertson drove S.M.S. to the Sheriff's Office where he placed S.M.S. in an interview room. During the video-taped interview, Deputy Robertson first read S.M.S. his *Miranda* rights. Deputy Robertson stopped after reading each right to ask S.M.S. if he understood it. S.M.S. nodded or replied each time that he understood. Deputy Robertson showed S.M.S. the waiver form after reading S.M.S. his rights. Deputy Robertson asked S.M.S. if he would agree to sign the waiver of his rights. S.M.S. agreed and signed the waiver.

¶6     Deputy Robertson interviewed S.M.S. about his family background and friends before he turned the conversation to what happened on October 7, 2007. S.M.S. divulged that he went into the bedroom of S.S. and started thinking about "it." When asked whether "it" meant sex, S.M.S. said yes. S.M.S. admitted that he became aroused, closed S.S.'s door, and approached her. S.M.S. first told Deputy Robertson he did not touch S.S., but S.M.S. later conceded that he had touched S.S.'s vagina with his hands. S.M.S. demonstrated for Deputy Robertson how he had touched S.S.

¶7     Deputy Robertson offered S.M.S. the choice to get a drink of water or to use the bathroom approximately half-way through the 80-minute interview. S.M.S. elected to use the bathroom. Deputy Robertson stopped the interview to allow S.M.S. to use the bathroom.

¶8     S.M.S. admitted after the interview had re-commenced that he had touched both S.S. and his younger brother several years earlier. S.M.S. further acknowledged to Deputy Robertson that he had gone through treatment in Georgia for previously having sexual

3

contact with a six year old. Deputy Robertson inquired whether S.M.S. understood that he would go through similar treatment in Montana and whether he knew there were laws against his conduct. S.M.S. answered affirmatively.

¶9 The State filed a motion for leave to file a youth court petition on October 17, 2007. The Youth Court granted the State leave to file its petition charging S.M.S. with felony sexual assault. The Youth Court sent S.M.S. a summons for an initial appearance on October 30, 2007. The Youth Court ordered S.M.S. to undergo a psychosexual evaluation at the conclusion of his initial appearance. Dr. Donna May Zook evaluated S.M.S. and filed her report with the court.

¶10 S.M.S. subsequently filed a motion to suppress his confession. He argued that his "severe cognitive delay" rendered involuntary both his waiver of his *Miranda* rights and his confession. Four separate psychological evaluations had revealed that S.M.S. possesses a very low level of intellectual functioning, that he needs special education classes, and that he suffers from fetal alcohol syndrome. S.M.S. also suffers from post-traumatic stress syndrome and has Attention Deficit Hyperactivity Disorder. S.M.S. also likely had been sexually abused as a child.

¶11 The Youth Court held a hearing on S.M.S.'s motion. Deputy Robertson testified about his interview with S.M.S. Dr. Michael Butz testified that S.M.S. has an IQ of 62 and only has the comprehension ability of a three to five year old. Dr. Butz did not believe that S.M.S. was capable of understanding his *Miranda* rights or to what he was confessing.

4

¶12 The State presented testimony of Dr. Zook. Dr. Zook testified that her evaluation of S.M.S. revealed him to be competent to stand trial. She testified that he understood his *Miranda* rights and that he has an IQ of 70. Dr. Zook testified further that she believed S.M.S. intentionally had manipulated the tests. She testified that the IQ test results significantly had underestimated S.M.S.'s abilities. Dr. Zook believed that S.M.S. knew that if he scored lower he would receive treatment rather than be incarcerated in a youth facility.

¶13 The court denied S.M.S.'s motion to suppress. The court found that S.M.S. had made a knowing and voluntary waiver of his *Miranda* rights and that his confession had been voluntary. S.M.S. eventually pled true to felony sexual assault. He preserved for appeal the challenge to his confession.

## STANDARD OF REVIEW

¶14 We engage in a twofold review of a district court's denial of a motion to suppress. *State v. Jones*, 2006 MT 209, ¶ 17, 333 Mont. 294, 142 P.3d 851. We initially review the court's findings of fact to determine whether they are clearly erroneous. *Jones*, ¶ 17. We then engage in a plenary review of the conclusions of law to determine whether the district court correctly interpreted the law. *Jones*, ¶ 17.

## DISCUSSION

¶15 S.M.S. argues that Deputy Robertson had subjected him to a custodial interrogation and thereby had triggered *Miranda*. S.M.S. further contends that his "severe cognitive delay" and inability to appreciate the nature of the custodial interrogation had caused him to involuntarily waive his *Miranda* rights. The State may not use confessions or admissions

5

obtained through "custodial interrogation" without first providing proper *Miranda* warnings. *State v. Honey*, 2005 MT 107, ¶ 18, 327 Mont. 49, 112 P.3d 983. An officer must obtain a valid waiver of *Miranda* rights before custodial questioning. *State v. Morrisey*, 2009 MT 201, ¶ 28, 351 Mont. 144, 214 P.3d 708.

¶16 A suspect is "in custody" for *Miranda* purposes when he has been "deprived of his freedom of action in any significant way" where a reasonable person would not feel free to leave. *State v. Reavley*, 2003 MT 298, ¶¶ 18-19, 318 Mont. 150, 79 P.3d 270. Deputy Robertson recognized that he was taking S.M.S. into custody when he interviewed him. Deputy Robertson transported S.M.S. to the Sheriff's Office where he placed S.M.S. in an interview room. S.M.S. reasonably believed that he was not free to leave. Deputy Robertson detained S.M.S. for over an hour and then arrested him at the conclusion of the interview. Deputy Robertson took his time explaining S.M.S.'s *Miranda* rights to make sure that S.M.S. understood each one before obtaining a signed waiver from S.M.S. Deputy Robertson did not begin to interrogate S.M.S. until after obtaining a waiver from S.M.S.

¶17 Section 41-5-331(2)(a), MCA, provides that as a 16 year old S.M.S. could make an effective waiver of his *Miranda* rights. The Youth Court noted in its order that S.M.S. was of valid age to waive his rights on his own. The court further weighed the conflicting testimony of Dr. Butz and Dr. Zook to determine that S.M.S. had understood his *Miranda* rights and possessed the ability to make a knowing and intelligent waiver of these rights. Our review of the interrogation video leads us to determine that the interrogation had been custodial. We further conclude, however, that Deputy Robertson had been conscientious in

6

explaining the *Miranda* warning to S.M.S. and that S.M.S. had understood and validly had waived those rights.

¶18    S.M.S. also argues that his confession had been involuntary. Section 46-13-301(1), MCA, permits a defendant to move to suppress a confession if it has been given involuntarily. The specific question of whether a defendant has given a voluntary confession "is largely a factual determination that is within the discretion of the district court." *State v. Hill*, 2000 MT 308, ¶ 37, 320 Mont. 415, 14 P.3d 1237.

¶19    A court must examine the totality of the circumstances. *Morrisey*, ¶ 26. These circumstances encompass both the characteristics of the individual and the details of the interrogation. *Morrisey*, ¶ 26. The totality of the circumstances includes the defendant's age, experience, education level, and the defendant's prior experience with the criminal justice system and police interrogation. *Jones*, ¶ 21. The court also must consider whether the police advised the accused of his *Miranda* rights and whether the police used impermissible practices to extract incriminating statements. *Jones*, ¶ 21.

¶20    S.M.S. met the age requirements of § 41-5-331(2)(a), MCA, for providing a valid waiver without his parents or counsel present. S.M.S.'s education level and cognitive abilities raise questions as to whether S.M.S. understood the gravity of the circumstances and his confession. Dr. Butz and Dr. Zook provided conflicting testimony regarding S.M.S.'s cognitive abilities. The Youth Court sat in the best position to evaluate the competing testimony along with the videotape of the interview to determine whether S.M.S. had confessed voluntarily.

7

¶21 Our review of the interrogation reveals that Deputy Robertson took appropriate care in explaining the *Miranda* warning to S.M.S. Deputy Robertson remained polite and respectful throughout the interview. He engaged in no impermissible practices in seeking to extract a confession from S.M.S. S.M.S. also had prior experience with the criminal justice system and police interrogation from an earlier sexual offense.

¶22 We cannot determine that the Youth Court's findings of fact were clearly erroneous based upon a totality of the circumstances. We further determine that the Youth Court correctly applied the law to these facts and its conclusions of law were correct. Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON